## PRITCHARD v. G & A TRUCK LINES.

1. WORKMEN'S COMPENSATION—TRUCKER—LOANED SERVANT.
   In dependents' proceeding to recover workmen's compensation, evidence supported finding of department of labor and industry that deceased truck driver did not make trip on which he was killed by virtue of agreement between party who hired him and who owned the truck and party that owner claimed was lessee and in complete control thereof by virtue of such lease agreement.

2. MASTER AND SERVANT—LOANED SERVANT—RIGHT TO CONTROL.
   Where master hires or lends servant to another for particular work and resigns control over servant while performing that

work, he ceases to be servant of original master and becomes servant of one to whom he is hired or lent.

3. SAME—TEST OF RELATION.

Where servant is hired or lent to another, in determining whose servant he is, test is as to who has right to control him.

4. WORKMEN'S COMPENSATION—LOANED SERVANT—RIGHT OF CONTROL.

In dependents' proceeding to recover workmen's compensation for death of truck driver from truck owner, evidence showed latter had not resigned full control over deceased who was subject to its directions at all times and was not a "loaned servant" to alleged lessee of truck.

5. EVIDENCE—TENTATIVE RULING OF ADMINISTRATIVE BUREAU.

In proceeding to recover workmen's compensation from owner of truck and its alleged lessee, it was not error to deny admission as evidence a tentative administrative ruling of the bureau of motor carriers of the interstate commerce commission.

Appeal from Department of Labor and Industry. Submitted January 10, 1945. (Docket No. 50, Calendar No. 42,807.) Decided May 14, 1945.

Eunice Pritchard, widow of Walter H. Pritchard, and others presented their claim against Glenn McNamara as owner of G & A Truck Lines, employer, and Massachusetts Bonding & Insurance Company, insurer, and Midwest Transfer Company, employer, and Eagle Indemnity Company, insurer, for compensation because of death of decedent. From award to plaintiffs against G & A Truck Lines and Massachusetts Bonding & Insurance Company, they appeal. Affirmed.

*Roy H. Hagerman,* for plaintiff.

*Frost, Frost & Ford* and *Franklin P. Bush,* for defendants G & A Truck Lines and Massachusetts Bonding & Insurance Company.

*Donald T. Anderson,* for defendant Midwest Transfer Company and Eagle Indemnity Company.

SHARPE, J. This is an appeal from the department of labor and industry.

Plaintiffs are the dependents of Walter H. Pritchard who was fatally injured while driving a truck owned by Glenn McNamara, as owner of G & A Truck Lines. It is conceded that plaintiffs are entitled to compensation as the result of the death of Walter H. Pritchard. The issue in this case is whether the compensation should be paid by G & A Truck Lines and its insurer or the Midwest Transfer Company and its insurer.

Walter H. Pritchard was hired by the G & A Truck Lines on or about November 1, 1942. He was paid wages as a truck driver at the rate of $9 per trip. On December 29, 1942, he was killed when the equipment he was driving left the highway a few miles west of South Bend, Indiana. At the time of the accident, he was driving a truck owned by the G & A Truck Lines, but hauling freight for the Midwest Transfer Company.

It appears that on August 1, 1942, the G & A Trucking Company, also known as G & A Truck Lines, entered into a written agreement with the Midwest Transfer Company concerning the use under lease of the equipment of the G & A Trucking Company by the Midwest Transfer Company. That part of the lease pertinent to the issue involved reads as follows:

"It is hereby mutually agreed that the Midwest Transfer Company, when it uses the trucks of the G & A Trucking Company, shall have full and complete supervision over such trucks, and will retain the privilege to hire or fire the drivers for these vehicles, and that these drivers will operate under in-

structions direct from the dispatchers and supervisors of the Midwest Transfer Company.''

The department of labor and industry held that deceased was a regular employee of Glenn McNamara, doing business as G & A Truck Lines; that Glenn McNamara had the right to and did exercise control over decedent on the trip to Chicago and return; and entered an award against Glenn McNamara.

Defendants McNamara and Massachusetts Bonding Company appeal and urge that the agreement of August 1, 1942, governed the relationship between the Midwest Transfer Company and the G & A Truck Lines; that under this agreement the Midwest Transfer Company had the right to hire and discharge drivers as well as complete supervision over the truck; and that at the time of the fatal accident, the right to control being in the Midwest Transfer Company, deceased was in the employ of the Midwest Transfer Company.

It is urged by the Midwest Transfer Company that at the time the fatal accident occurred, deceased was not operating under the agreement of August 1, 1942; that deceased was not engaged in an operation different from his usual occupation; that no particular instructions were needed to be given to him by the Midwest Transfer Company in order to successfully complete the trip; and that deceased was at all times under the direction and control of G & A Truck Lines.

Of importance is the determination of whether deceased made the trip by virtue of the agreement of August 1, 1942, as claimed by G & A Truck Lines, or under a trip lease, as claimed by the Midwest Transfer Company. It appears that the so-called trip lease was the contract by virtue of which the trip from Maywood, Illinois, back into Michigan was made. There is evidence that the trip lease

agreement was in writing. It was not produced at the hearing, hence there is no evidence of its contents.

The department found as a fact that the trip was not made by virtue of the agreement of August 1, 1942, but did not make any finding that the trip was made under the trip lease agreement. There is competent evidence to sustain the finding of the department that the trip was not made by virtue of the agreement of August 1, 1942.

Glenn McNamara testified:

"*Q.* Was this cargo being hauled for the Michigan Transfer Company?

"*A.* It was being hauled under trip lease, yes.

\*   \*   \*

"*Q.* Is there a trip lease covering this trip?

"*A.* Yes.

"*Q.* And it was a subsequent agreement, subsequent to that agreement and in writing?

"*A.* In writing.

"*Q.* It was the contract by virtue of which that trip was made?

"*A.* That is right."

In view of the fact that the trip was not made by virtue of the written agreement of August 1, 1942, it becomes necessary to explore other sources of information to determine who was the employer of deceased.

In *Rockwell* v. *Railway Co.*, 253 Mich. 144, we said:

"It is a well-settled rule of law that when one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent. In determining whose servant he was the

test is, who had the right to control him.  In 18 R.
C. L. p. 784, § 244, it is stated:

" 'But to avoid liability the original master must
resign full control of the servant for the time being.
It is not sufficient that the servant is partially under
the control of another.'    *    *    *

"And in *W. S. Quinby Co.* v. *Estey,* 221 Mass. 56
(108 N. E. 908), the court said:

" 'If the servant remains subject to the general
orders of the man who hires and pays him, he is
still his servant, although specific directions may be
given him by another person from time to time as to
the details of the work and the manner of doing
it.' "

See, also, *Allen* v. *Kendall Hardware Mill Supply
Co.,* 305 Mich. 163.

The record shows that deceased was hired and
paid by G & A Truck Lines.  He was operating
equipment owned by G & A Truck Lines.  On the
question of control over deceased, Glenn McNamara
testified:

"*Q.*    *    *    *    Did you give orders for Mr.
Pritchard to go on this trip?

"*A.*  Yes, sir.

"*Q.*  Tell him when to go, how to go, where to go
and when to return?

"*A.*  Yes.

"*Q.*    *    *    *    When Mr. Pritchard was on this
trip was he driving your equipment?

"*A.*  Yes, sir.

"*Q.*  Was that equipment during that trip under
your direction and your control?

"*A.*  Yes, sir.    *    *    *

"*Q.*  I want to ask you if you directed Mr. Pritchard at Chicago where to take that load back?

"*A.*  I told him what he should do for a return
load.    *    *    *

"*Q.*  You told him to go to Chicago and find out
where Midwest had a load and to bring it in?

"*A.* Yes.

"*Q.* And the control exercised in this particular case was no different than the case when your driver brought your own load back, except that they picked up the load at Midwest Transfer and found out where it was going to go?

"*A.* That is right."

It is clear from the above testimony that G & A did not resign full control over deceased on the trip to and from Chicago. It retained a general control over deceased at all times. He was subject to its directions at all times. Deceased was not such a loaned servant as is mentioned in the *Allen Case, supra.* There is competent evidence to sustain the determination of the department that deceased was in the employ of G & A Truck Lines.

It is urged that the department was in error in excluding the following exhibit offered in evidence by the G & A Truck Lines.

"Ruling No. 4                          August 19, 1936
    (08.101)
            "INTERSTATE COMMERCE
                    COMMISSION
            Bureau of Motor Carriers

"The following is an administrative ruling of the bureau of motor carriers, made in response to questions propounded by the public, indicating what is deemed by the bureau to be the correct application and interpretation of the act. Rulings of this kind are tentative and provisional and are made in the absence of authoritative decisions upon the subject by the commission.

"Question:

"Under what circumstances may a carrier add to its equipment by leasing a vehicle and obtaining the service of its owner-driver?

"Answer:

"The lease or other arrangement by which the equipment of an authorized operator is

augmented, must be of such a character that the possession and control of the vehicle is, for the period of the lease, entirely vested in the authorized operator in such way as to be good against all the world, including the lessor; that the operation thereof must be conducted under the supervision and control of such carrier; and that the vehicle must be operated by persons who are employees of the authorized operator, that is to say, who stand in the relation of servant to him as master."

It is to be noted that the exhibit is an administrative ruling of the bureau of motor carriers under date of August 19, 1936. It is a *tentative* ruling of the bureau and not a ruling of the interstate commerce commission. It was not error to deny its admission as evidence.

The award is affirmed, with costs to Midwest Transfer Company as against G & A Truck Lines.

Starr, C. J., and Wiest, Butzel, Bushnell, and Reid, JJ., concurred with Sharpe, J.

Boyles, J. (*concurring*). I agree with Mr. Justice Sharpe except the statement that this case can be distinguished from *Allen* v. *Kendall Hardware Mill Supply Co.,* 305 Mich. 163, by the fact that in that case Allen was a "loaned servant." The yardstick for determining who was the employer in both cases is *not* whether the employee was a loaned servant, but it is whether the original employer had resigned *full* control over the employee for the time being. This was plainly pointed out in *Rockwell* v. *Railway Co.,* 253 Mich. 144, again in the minority opinion in the *Kendall Hardware Case,* and it is the proper rule as now applied in the present case.

North, J., concurred with Boyles, J.