ROCKWELL *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. MASTER AND SERVANT—LIABILITY OF MASTER FOR ACTS OF SERVANT TEMPORARILY LENT.

    If relation of master and servant was suspended while servant was temporarily assisting another, master would not be liable for servant's acts.

2. SAME—RIGHT TO CONTROL.

    Where master hires or lends servant to another for particular work and resigns control over servant while performing that work, he ceases to be servant of original master and becomes servant of one to whom he is hired or lent.

3. SAME—TEST OF RELATION.

    Where servant is hired or lent to another, in determining whose servant he is, test is as to who has right to control him.

4. SAME—NEGLIGENCE—RAILROADS.

    Where railroad company, owning electric crane which it furnished to consignees to unload freight, paid operator, had right to discharge him, and consignee had no control over crane or operator except by way of signals to indicate direction of hoisting, operator was servant of railroad company, rendering it liable for his acts.

5. NEGLIGENCE—RAILROADS—QUESTION FOR JURY.

    Where testimony was conflicting as to whether operator of electric crane owned by railroad company disregarded signals in unloading steel beams, resulting in injury to truckman, question of operator's negligence was for jury.

6. SAME—CONTRIBUTORY NEGLIGENCE.

    Where testimony was conflicting as to whether truckman was warned of danger and disregarded it, resulting in his injury, question of his contributory negligence was for jury.

7. SAME—PROXIMATE CAUSE.

    Though plaintiff's negligence may not be proximate cause, it is contributory negligence if it contributes to cause.

On the question as to test of the existence of relation of master and servant, see annotation in 37 L. R. A. 38; 55 A. L. R. 1263.

8. SAME.

Contributory negligence is negligence of plaintiff which operates with negligence of defendant in producing injury; plaintiff's negligence combined with defendant's negligence being proximate cause of injury.

9. SAME.

Contributory negligence of plaintiff necessarily implies negligence on part of defendant; theory being that defendant's negligence causes injury, and plaintiff's negligence contributes to it.

10. APPEAL AND ERROR—TRIAL—INSTRUCTION—CONTRIBUTORY NEGLIGENCE.

In action for personal injury, court's failure to define contributory negligence, and instruction, in effect, that plaintiff's negligence would not be contributory negligence unless it was sole proximate cause of injury was reversible error.

Error to Genesee; Black (Edward D.), J. Submitted October 8, 1930. (Docket No. 29, Calendar No. 35,155.) Decided January 7, 1931.

Case by George F. Rockwell against the Grand Trunk Western Railway Co., a corporation, for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed, and new trial granted.

*C. A. Withey* and *C. A. Bishop,* for plaintiff.

*Frederic T. Harward* and *H. V. Spike (Brownell & Gault,* of counsel), for defendant.

McDONALD, J. This action was brought to recover damages for injuries received by the plaintiff on May 28, 1928, while assisting in the unloading of a car of steel beams in the defendant's yards in the city of Flint, Michigan.

The defendant maintains an electric crane for unloading of heavy freight. The plaintiff was engaged in the trucking business. On the day of the

accident, he was engaged by a bridge contractor to unload a car of I-beams and haul them to the site of the bridge. As the beams were being unloaded, the plaintiff stood near the center of the car toward the north side. The beams were being raised by the crane and deposited on some timbers on the ground beside the car. As one of the beams was being lifted, it was swung over against the plaintiff and seriously injured him. The facts will be more fully stated as we proceed with the discussion of the questions involved. It is sufficient at this time to say that the plaintiff claims he was free from contributory negligence; that defendant was negligent in furnishing an incompetent employee to operate the crane; that the operator was negligent in placing the lifting fulcrum, or trolley of the crane, beyond the beam and over toward the plaintiff; that it was his duty to operate the crane when signaled, and, instead of lifting the beam straight up as he was signaled to do, he negligently swung it to the side and against the plaintiff.

It was the defendant's claim that the crane was furnished for the convenience of the consignees, whose business it was to unload the freight; that in unloading the steel beams it furnished a competent man to operate the crane, and that, in doing this particular work, he was the servant of the plaintiff, and that therefore defendant was not liable for his negligent acts; that the operator was not negligent, and that the plaintiff's injuries were caused solely by his own negligence.

On these issues the jury gave the plaintiff a verdict for $28,000. After disposing of the usual motions, the court entered judgment on the verdict. The defendant has brought error, requesting a reversal on the following grounds:

1. That as a matter of law Mr. Lewis, the operator of the crane, was the servant of the plaintiff while assisting in the unloading of the steel, and therefore it was not liable for his acts.

If the defendant is held liable its liability must rest on the existence of ·a relation of master and servant between it and the operator of the crane at the time of the accident. He was its general servant. But if, under the circumstances, that relation. was suspended while the servant was temporarily assisting the plaintiff in unloading the car, the defendant could not be held liable for his acts while so engaged. It is a well-settled rule of law that when one person hires or lends his servant to another for some particular work and resigns full control over him while performing that work, he ceases for the time to be the servant of the original master and becomes the servant of the party to whom he is hired or lent. In determining whose servant he was the test is, who had the right to control him. In 18 R. C. L. p. 784, § 244, it is stated:

"But to avoid liability the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of another."

This principle from the quoted text was followed in *Janik* v. *Ford Motor Co.,* 180 Mich. 557 (52 L. R. A. [N. S.] 294, Ann. Cas. 1916A, 669), and is supported by numerous authorities from other jurisdictions. In *Standard Oil Co.* v. *Anderson,* 212 U. S. 215 (29 Sup. Ct. 252), it was said:

"In many of the cases the power of the substitution or discharge, the payment of wages and other circumstances bearing upon the relation are dwelt upon. They. however are not the ultimate facts, but only those more or less useful in determining

whose is the work and whose is the power of control. * * *

"To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

In *W. S. Quinby Co.* v. *Estey,* 221 Mass. 56 (108 N. E. 908), it was said:

"The original master remains liable and the employee remains his agent, unless the authority to direct and control the servant in all the details of the transaction is surrendered to some other person, so that the business in which the servant is engaged is no longer the business of his general employer, but is in all respects the business of the person to whom he is sent."

In the instant case the defendant furnished the crane to increase its business in the carrying of heavy weight. It selected a man who had been instructed in its use to care for and operate it. He had exclusive control and management of it. While operating it, he was engaged in the furtherance of the defendant's business. He did nothing that the plaintiff was required to do. He knew the safe way and the unsafe way to operate it. He was selected by the defendant, paid by the defendant, and could be discharged whenever it pleased the defendant. The plaintiff had no control over the crane or the operator except that by signals he could direct when and in what direction the beams should be hoisted. Beyond this he was not allowed to interfere with its operation. In *Johnson* v. *Netherlands American Steam Navigation Co.,* 132 N. Y. 576 (30 N. E. 505),

a similar question was before the court. It was there said:

"It is quite apparent that it was the intention of the defendant to retain charge of the steam power and winch and operate it through its own servants and employees. And the fact that the winchman received orders from the plaintiff when to hoist and when to lower, under the circumstances in this case, does not operate to change his relations to the defendant as his servant."

And in *W. S. Quinby Co.* v. *Estey, supra,* the court said:

"If the servant remains subject to the general orders of the man who hires and pays him, he is still his servant, although specific directions may be given him by another person from time to time as to the details of the work and the manner of doing it."

In the instant case, the question was submitted to the jury, and we think the evidence justified them in finding that, in doing the work in which he was engaged at the time of the accident, the operator of the crane was the defendant's servant.

2. It was not shown that defendant was negligent. The defendant's servant, Lewis, had control of the crane. He owed to the plaintiff the duty of complying with all signals given as to when and how the beams should be hoisted. It was charged, and the plaintiff's testimony shows, that he disregarded a signal to lift a beam straight up, and, instead, lifted it sideways, thereby causing the injury to the plaintiff. This testimony was disputed by the defendant, and therefore became a question for the jury. It was sufficient to justify the court in submitting it.

3. The plaintiff was guilty of contributory negligence as a matter of law. The defendant claims that the plaintiff was familiar with the dangers attending the unloading of heavy freight by means of a crane; that he negligently took an unsafe position on the car; that Mr. Lewis warned him of the danger before he started to hoist the beam which injured him; that the plaintiff disregarded the warning and remained in a position of danger. The plaintiff sought to show that, except for the negligence of the defendant, his position on the car was not dangerous; he denies that he received any warning from the operator, and insists that he had a right to assume the operator would comply with the signals and would not swing the beam against him. In these circumstances, the question of contributory negligence was for the jury.

4. The court erred in his instructions to the jury as to contributory negligence. In his charge he said that it was necessary for the plaintiff—

"not only to show that the defendant was guilty of negligence, but he must also show himself free from what is known as contributory negligence, that is, that the negligence of the plaintiff was [not] the proximate cause of the injury."

This instruction was emphasized by frequent repetitions throughout the charge. It did not give a correct definition of contributory negligence. When the court said that contributory negligence is the proximate cause, he implied that there is no other cause, that it was the sole cause. Though plaintiff's negligence may not be the proximate cause, it is contributory negligence if it contributes to the cause. Contributory negligence is negligence of the plaintiff which operates with the negligence of the defendant in producing the injury. Where

there is contributory negligence, the plaintiff's negligence combined with the defendant's negligence is the proximate cause of the injury. The negligence of each may be a proximate cause but neither can be the cause or sole cause. Contributory negligence necessarily implies negligence on the part of the defendant. The theory is that the defendant's negligence causes the injury and the plaintiff's negligence contributes to it. Probably something of this kind was in the mind of the court in *McKeller* v. *Township of Monitor,* 78 Mich. 485, where it was said:

"We think the jury may not have understood the court upon the question of the plaintiff's negligence, as he failed to distinguish between negligence which caused the injury and negligence which contributed to it."

In the instant case, the court's instruction, in effect, was that the plaintiff's negligence would not be contributory unless it was the sole proximate cause of the injury. The jury must have understood it that way. No other inference was probable. Contributory negligence is only one element of proximate cause. That term is not generally understood by the lay mind, and the court ought to have defined it especially as to its connection with contributory negligence. A similar instruction was held to be erroneous and prejudicial in *Wastl* v. *Railway Co.,* 24 Mont. 159 (61 Pac. 9). In that case it was said:

"The jury are told that, though the plaintiff was negligent, he was ·not precluded from a recovery unless his negligence was the proximate cause of the injury. The use of the article 'the' with its specifying and particularizing force as opposed to the indefinite article 'a,' which should have been used, excludes the idea of any other concurring cause.

\* \* \* From the particular phrase in which the definite 'the' is used, the jury could, and perhaps did, infer that the plaintiff, though guilty of negligence which could be called an approximate cause of the injury, should nevertheless be held not barred, unless the proof showed that his negligence was the sole causal agency in producing the injury.''

Under the proofs in the instant case, contributory negligence was a close question. The instruction complained of gave the plaintiff an unfair advantage, and therefore was prejudicial.

Other questions are not likely to arise on a second trial, and do not require discussion. The judgment is reversed, with costs to the defendant, and a new trial is granted.

BUTZEL, C. J., and WIEST, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.