### WHITE *v.* BYE.

1. MASTER AND SERVANT—LOAN OF SERVANT.
   A servant directed by his master to perform services for another may become the servant of such other.

2. SAME—LOANED SERVANT—RESPONDEAT SUPERIOR—CONTROL.
   The ultimate test as to liability under the doctrine of *respondeat superior* for injuries to a third person done by a loaned servant is made by ascertaining whose work is being done and in making such determination the question of the power to control the work is of great importance.

3. SAME—LOANED SERVANT—CRANE OPERATOR—HAND SIGNALS.
   Fact that an employee of defendant boiler installer gave hand signals and directions to defendant crane owner's operator while crane and its operator, which had been leased to general construction contractor and by him temporarily and gratuitously loaned to boiler installer for purpose of moving a reel of cable, did not constitute the giving of orders, but of information, and the obedience to such signals showed cooperation, rather than subordination, and did not effect a change of masters of the crane operator.

REFERENCES FOR POINTS IN HEADNOTES

[1] 35 Am Jur, Master and Servant § 18.
[2–4] 35 Am Jur, Master and Servant § 541.
[3, 4] 35 Am Jur, Master and Servant § 539.
[6] See, generally, 8 Am Jur, Negligence § 53 *et seq.*
[7] 38 Am Jur, Negligence § 348.
[8] 3 Am Jur, Appeal and Error § 1115.
[9] 14 Am Jur, Costs § 91 *et seq.*

4. SAME—LOANED SERVANT—CRANE OPERATOR—CONSTRUCTION OF FACTORY.

A change of masters of skilled crane operator to installer of boilers, whose negligence injured plaintiff operator of bulldozer, was not effected by reason of the fact that owner of crane who contracted to furnish the use of the crane and operator, as a unit, to the general contractor and latter had temporarily loaned the use of the crane and its operator to a separate contractor engaged in installation of boilers for the purpose of moving a reel of cable, the practice of making temporary loans of the use of such heavy equipment as a crane with or without pay being customary in the construction industry, and the use of a crane for assistance in installation of boilers not being within the normal scope of the business of the borrower.

5. SAME—NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE—SIGNALS TO CRANE OPERATOR.

Evidence of negligence on part of men working for defendant boiler installation contractor in giving of signals to crane operator, assuming the operator was not such defendant's servant, *held,* insufficient to establish that such signals were a proximate cause of the accidental injuries to plaintiff bulldozer operator who was doing work within the ambit of the crane operations while use of crane and its operator were temporarily loaned to such defendant.

6. NEGLIGENCE—PROXIMATE CAUSE—BULLDOZER OPERATOR—CRANE OPERATOR.

Proximate cause of plaintiff bulldozer operator's injuries *held,* to have been the failure of defendant's crane operator to keep main boom's load line from swinging loose so as to permit large terminal hook from breaking loose from point of attachment and swinging outward so as to strike plaintiff while moving reel of cable by use of jib boom.

7. SAME—CONTRIBUTORY NEGLIGENCE—PROXIMATE CAUSE—EVIDENCE —CRANES—BULLDOZERS.

The issue of contributory negligence of plaintiff bulldozer operator in performing his work within the ambit of operations of defendant's crane, leased to plaintiff's employer, the general contractor engaged in construction of a factory, *held,* properly submitted to jury under evidence presented.

8. APPEAL AND ERROR—INSTRUCTIONS—PREJUDICE.

Claimed error in charge to jury to the effect that one of the defendants was favored *held,* not prejudicial, where jury decided against such defendant.

9. COSTS—BRIEFS—TIME.

No costs are allowed against plaintiff-appellant in favor of one of the defendants, where such defendant neglected to file a timely brief and judgment is affirmed.

Appeal from Genesee; Roth (Stephen J.), J. Submitted April 6, 1955. (Docket No. 37, Calendar No. 46,373.) Decided June 6, 1955.

Case by Verl L. White against W. C. Bye, doing business as W. C. Bye Excavating & Trucking Company, and Babcock & Wilcox Company, a New Jersey corporation, to recover damages for injuries sustained from borrowed use of crane on construction job. Verdict and judgment for plaintiff against defendant Bye. Judgment notwithstanding verdict for defendant Babcock & Wilcox. Defendant Bye appeals. Plaintiff cross appeals as to defendant Babcock & Wilcox Company. Affirmed.

*Hoffman & Rubenstein,* for plaintiff.

*James M. Pearson,* for defendant Bye.

*Gault, Davison & Bowers* (*M. Davison, Jr.,* of counsel), for defendant Babcock & Wilcox Company.

BUTZEL, J. On May 9, 1952, plaintiff, Verl L. White, was an employee of the J. A. Utley Company, hereinafter referred to as Utley, who was general contractor for the construction of a plant for Buick division of General Motors Corporation. Utley had leased a crane and operator together as a unit from defendant W. C. Bye Excavating & Trucking Company, hereinafter referred to as Bye, for use in the large construction area where a number of other contractors were also working. Among the latter was Babcock & Wilcox Company, hereinafter referred to as Wilcox, which was engaged in erecting

boilers in a powerhouse. In the construction indus-
try it is a practice for one contractor who owns or
has leased heavy equipment, such as cranes, to ac-
commodate others on the same project by allowing
them the use of this equipment when it can be so
spared. If the use involves a small job requiring a
negligible amount of time, no charge is made. If,
however, substantial use and time are involved a
charge therefor is usually made. Here, Wilcox, an,
independent contractor with Buick and having no
formal relationship with Utley, borrowed the use of
this crane and operator for a few moments to trans-
fer a reel of cable to the partially-completed power-
house. The operation consumed but a short period
of time and apparently was one of those instances
for which no charge was made. In the course of this
operation plaintiff was injured and he brought suit
against Bye and Wilcox.

The crane, on being assigned to the job for Wil-
cox, was moved to a point north of the partially-
constructed powerhouse, and south of the small Wil-
cox office. The reel of cable was located northwest
of the office and, being some distance from the crane,
required the use of the jib boom of the crane, rather
than the main boom. The up and down movements
of the booms were controlled by the work lines, so-
called, attached to the rear portion of the crane cab.
The lines to which the objects are attached were
called the load lines. These ran through wheels on
the ends of the jib and main booms and were at-
tached to revolving drums directly in front of the
crane cab. There is a main boom load line and a jib
boom load line. Since the jib boom load line was the
one being used for this particular job, the hook end
of the main boom load line was put out of the way
by securing it to the base of the main boom and
making it taut. The boom itself initially stayed at
the same fixed angle.

Plaintiff, driving a bulldozer pursuant to instructions, had come around the east end of the powerhouse to a point southeast of the crane, well within and under the arc of the raised boom. At the time of the accident he was making adjustments on the bulldozer, having previously talked to the crane operator.

The crane, pointing north, picked up the cable on the jib boom load line and swung it clockwise toward the powerhouse where it was to be placed. Employees of Wilcox directed the movements of the crane by hand signals and directions. These were necessary to show where the crane was to go but had nothing to do with the operation or control of the crane. Plaintiff was under the boom as it passed over his head going in a southerly direction and within the arc described by the cable on the end of the line. The operator was about to set the cable down when instructions were changed. He reversed the movement of the crane to a northerly counterclockwise direction so that the crane came back again over the plaintiff's head. The operator then began to lower the reel of cable to the deck of the powerhouse. In doing so he was obliged to lower the boom as well. However, on lowering the boom, he forgot to slacken sufficiently the main boom load line, which, as was stated, was tautly attached to the base of the boom. Lowering the boom without slackening this line caused the line with its large terminal hook to break loose from the point of attachment and swing outward thus striking plaintiff.

Upon completion of the testimony, Bye moved for a directed verdict on the grounds that (1) plaintiff was guilty of contributory negligence as a matter of law, and (2) the crane operator was no longer defendant's servant at the time of the accident. These motions were denied. The judge also denied defendant Wilcox's motions that there was no evidence of

its negligence and that as a matter of law the crane operator was not its servant. The case was submitted to the jury who returned a verdict for $20,000 against both defendants. In addition the jury answered 2 special questions submitted by Bye to the effect that the crane operator was not "under the exclusive control and direction of J. A. Utley Company" and that plaintiff was not guilty of negligence in "not paying attention to or observing the movement of the boom and load of the crane of W. C. Bye back and forth over him and the bulldozer." Thereafter, the judge granted defendant Wilcox's motion for judgment *non obstante veredicto.* Bye has appealed from the judgment against him and White, plaintiff, has cross-appealed from the judgment *non obstante veredicto* in favor of Wilcox. The negligence of the crane operator is unquestioned.

The disposition of this case depends primarily upon the answer to the query—whose servant was the crane operator at the time the accident occurred? Once answered, the principle of *respondeat superior* fixes liability. That a servant directed by his master to perform services for another may become the servant of such other in performing these services is well settled. There are many possible tests for the existence of the master-servant relationship in any one instance. See 1 Restatement, Agency, § 220 (2). However, in Michigan as in many jurisdictions, the most important and significant of these tests have been set forth in this manner:

"The ultimate test is: Whose is the work being done? * * * In determining whose work is being done, the question of the power to control the work is of great importance."

*Allen* v. *Kendall Hardware Mill Supply Co.,* 305 Mich 163, 166; *Buskirk* v. *Ide,* 302 Mich 154, 165. See

*Rockwell* v. *Grand Trunk Western Railway Co.*, 253 Mich 144.

The facts pertinent to this issue are that: Bye owned the crane and hired the operator and paid his wages; the crane and operator were hired as a unit, with Bye paying the maintenance, insurance, et cetera; Bye was in the business of renting cranes with his own skilled employees to operate them; the operator was the only person who could operate the controls of the crane; Utley or Wilcox could not discharge the operator from Bye's employ though they could apparently force Bye to put another operator in his place; Wilcox gave hand signals and directions for moving the reel of cable to indicate to the operator where the crane was to go; the operator could refuse to do any job which he felt would injure the crane; and it was customary on a building project of this kind for a lessee of a crane to accommodate other contractors by lending them his crane either for a charge or in some cases for nothing. Bye contends that the operator ceased being his servant because Wilcox or Utley "exercised detailed on-the-spot control of the actual operation" and it was their work that was being done at the time. We are convinced, however, that the directions and signals on the scene were not sufficiently significant, in and of themselves, to establish the master-servant relationship. The noise and the nature of the work made the directions and signals from below necessary. In *Rockwell* v. *Grand Trunk Western Railway Co.*, *supra*, the defendant maintained an electric crane for the unloading of heavy freight and the plaintiff trucker was unloading a car. In respect to defendant's liability, as master, we stated (p 148):

"The plaintiff had no control over the crane or the operator except that by signals he could direct when

and in what direction the beams should be hoisted. Beyond this he was not allowed to interfere with its operation."

In the landmark and oft-quoted case of *Standard Oil Co.* v. *Anderson* (1909), 212 US 215 (29 S Ct 252, 53 L ed 480), the court considered this problem as applied to the Standard Oil Company whose ship was being loaded by means of its own winch, operated by its own man, though the stevedoring company gave signals and directions and supplied the tackle. The court stated in holding the company liable (pp 222, 226):

"Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.
\* \* \*
"Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be cooperation and coordination, or there will be chaos. The giving of signals under the circumstances of this case was not the giving of orders, but of information, and the obedience to those signals showed cooperation rather than subordination, and is not enough to show that there has been a change of masters."

We believe these words are equally, if not more, applicable to the instant case. The construction project herein involved was many times larger and more complicated, making cooperation much more of a necessity.

Nor can we conclude that it was the work of Wilcox or Utley which was being done at the time of the accident, except in a broad sense. While we agree that:

"This test is practically valueless where, as in the instant case, the general employer's business consists of furnishing men to perform work for the special employer, because by doing his job the worker is necessarily furthering and doing the business of both employers." *Nepstad* v. *Lambert,* 235 Minn 1, 11 (50 NW2d 614, 620), affirmed in companion case, *sub nom., Knutson* v. *Lambert,* 235 Minn 328 (51 NW2d 580),

we also must subscribe to the words of the court in the *Standard Oil Company Case, supra,* that (pp 221, 225):

"he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. * * *

"The power, the winch, the drum, and the winchman were its own. It did not furnish them but furnished the work they did to the stevedore."

In the instant case, Bye furnished the crane, operator and the operator's know-how as an entity. The operator was hired by and remained under Bye's control. Bye was in the business of lifting and transporting of objects for other persons by means of cranes. He furnished these services and not the operator and crane individually. In the *Rockwell Case, supra,* we said (p 148):

"In the instant case the defendant furnished the crane to increase its business in the carrying of heavy weight. It selected a man who had been instructed in its use to care for and operate it. * * * While operating it, he was engaged in the furtherance of the defendant's business. He did nothing that the plaintiff was required to do. He knew the safe way and the unsafe way to operate it. He was selected by the defendant, paid by the defendant, and

could be discharged whenever it pleased the defendant."

The ambiguity of the concepts of "control" and "whose business," arising from the fact that they may be defined broadly or narrowly, has caused another test to be advocated—the scope of the business of the borrower test. See article entitled "Scope of the Business: The Borrowed Servant Problem," by Talbot Smith in 38 Mich L Rev 1222 (1940). Considered in the light of the facts this test compels a conclusion similar to the one reached by way of the other tests. Wilcox was in the boiler business. It had undoubtedly installed boilers in projects similar to the one here involved, *i.e.*, where the general or other contractor had cranes available. The record indicates that Wilcox's use of the equipment was in some way anticipated by Utley and Buick. Undoubtedly there were also jobs which did not require the use of a crane. The lifting of the cable in this instance required but a few moments which probably constituted a small fraction of the time Wilcox expended in erecting the boilers. Under such circumstances we feel that the use of a crane for that purpose was not within the normal scope of Wilcox's business. Its type of business dictated the apparent decision not to own and operate its own crane and not the fact that it wished to insulate itself from liability by farming out the crane operation.

Appellant has cited cases indicating a contrary result, particularly *Nepstad* v. *Lambert, supra,* and *Kessler* v. *Bates & Rogers Construction Co.,* 155 Neb 40 (50 NW2d 553). The *Kessler Case* is distinguishable first, because the defendant was not in the business of renting cranes but rather was the general contractor on the project possessing its own, and second, because the actions of the "special" employer consisted of something more than the mere giving of directions. The *Nepstad Case,* as well as the *Kes-*

*sler Case,* did not involve, as here, a borrower from the lessee of the crane, both of whom were working on different phases of a construction project. As shown by the annotation at 17 ALR2d 1442 *et seq.,* where most of the equipment cases are noted, many of them are to a large degree irreconcilable and an attempt to distinguish and harmonize each of them would be fruitless. While probably not in accord with some, we prefer the reasoning herein adopted and generally approve of the comment in 1 Restatement, Agency, § 227, pp 501, 502:

"Comment c. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. * * *

"The fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality."

Another consideration is that on large construction projects of this type there is a considerable amount of accommodation of various contractors by others, for, in many cases, negligible amounts of time. We cannot conceive of a master-servant relationship so fluid in nature that it would attach to all of these users of equipment by the giving of a few hand signals and directions and virtually nothing more. The relationship is deeper rooted and more fundamental.

Wilcox can only be held liable if, (1) assuming the crane operator not to be its servant, its men negligently gave signals causing the accident, or (2) as-

suming the crane operator to be its servant by virtue of *respondeat superior*. As to (1) we agree with the judge below who granted a judgment *non obstante veredicto* in favor of Wilcox. If there was negligence in the giving of the signals, and the evidence of it is almost nonexistent, it was not the proximate cause of the accident. The proximate cause was the operator's failure to loosen the main boom load line. As to (2) we have held that as a matter of law the crane operator was not its servant.

Bye contends that the plaintiff was guilty of contributory negligence as a matter of law, relying principally upon *Troy* v. *Taylor & Gaskin, Inc.*, 282 Mich 327. Aside from the factual cause-of-accident difference, the Court there merely held that the judgment in favor of the defendant on grounds of plaintiff's contributory negligence was supported by the evidence, and not that he was contributorily negligent as a matter of law. It is argued that the failure to observe certain safety instructions amounted to contributory negligence. The extent and substance of such instructions is far from clear and those revealed in the record are not so positive or pointed as would compel a conclusion that their disregard constituted contributory negligence as a matter of law. The jury answered "No" to the following special question submitted by Bye:

"2. Do you find that Verl L. White, the plaintiff herein, was guilty of negligence in not paying attention to or observing the movement of the boom and load of the crane of W. C. Bye back and forth over him and the bulldozer?"

Plaintiff's contributory negligence was correctly considered a question of fact for the jury. Error in the charge to the effect that Wilcox was favored was nonprejudicial. The jury decided against Wilcox.

Other errors complained of are of insufficient merit

or substance to warrant discussion. The judgment *non obstante veredicto* in favor of Wilcox and the judgment on the verdict of the jury against Bye are hereby affirmed, with costs, except as to defendant Wilcox who neglected to file a timely brief.

CARR, C. J., and SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred with BUTZEL, J.

SMITH, J., concurred in the result.