## SCHULTE *v.* AMERICAN BOX BOARD COMPANY.

1. Master and Servant—Construction—Agreements Between Contractor-Employer and Defendant-Owner.

    Finding of trial court on motion to dismiss that cost-plus-fixed-fee contract between building construction contractor, subject to workmen's compensation act, and defendant established latter as plaintiff's employer *held,* erroneous where, although it is alleged the cost of workmen's compensation insurance was specifically provided for in the contract, that defendant did not hire plaintiff nor direct his work nor issue his pay checks but only retained the right to object to plaintiff's conduct or workmanship, hence, plaintiff was not precluded from maintaining his action for injuries sustained when roof of defendant's building collapsed.

2. Negligence—Workmen's Compensation—Contracts—Collapse of Roof.

    Workmen's compensation act provisions relative to liability of principal for injuries to contractor's employees and cost-plus-

References for Points in Headnotes
[1, 2, 3]  58 Am Jur, Workmen's Compensation § 132 *et seq.*

fixed-fee contract between defendant owner and employer of plaintiff, a construction contractor subject to act, did not preclude plaintiff from maintaining action for negligent injuries received when roof of defendant's building collapsed (CLS 1956, § 411.10).

3. Master and Servant—Evidence of Relationship—Workmen's Compensation Act.

The relationship of employer and employee is not established so as to preclude an action by the latter when injured due to negligence of the former merely because liability for workmen's compensation is imposed by the workmen's compensation act, under certain circumstances, upon the person for whom the injured party was performing service under contract with another (CLS 1956, § 411.10).

Appeal from Manistee; Stephens (Rupert B.), J. Submitted April 14, 1959. (Docket No. 51, Calendar No. 48,073.) Decided November 24, 1959.

Case by Raymond Schulte against American Box Board Company, a Michigan corporation, for personal injuries sustained on defendant's premises while in the employ of a company constructing building under cost-plus-fixed-fee contract. Declaration dismissed. Plaintiff appeals. Reversed and remanded.

*Poppen, Street & Sorensen* (*Harold M. Street,* of counsel), for plaintiff.

*Varnum, Riddering, Wierengo & Christenson* (*L. K. Varnum* and *F. William Hutchinson,* of counsel), for defendant.

Kelly, J. The court granted defendant's motion to dismiss plaintiff's declaration, and plaintiff appeals, submitting the following question:

"Where corporation A, which has compensation insurance covering its employees, enters into a contract to construct a building for corporation B, and in the course of the work an employee of corporation

A is injured by reason of a defective roof maintained by corporation B, may such injured employee maintain a common-law action against corporation B as a third-party tort-feasor?

"The lower court answered 'No.'

"Appellant contends the answer should be 'Yes.'"

Appellant and appellee agree that there is presented a question which has not previously been submitted to this Court.

Sumner Sollitt Company contracted to construct a paper-board mill and other facilities for defendant, in Manistee county, and was to be paid a fixed fee of $385,000, plus the "cost of the work." Cost included all labor, materials, salaries and travel expenses of field employees, and premiums on workmen's compensation insurance. The cost items were to be invoiced to defendant at regular periods as the construction progressed.

The contract provided that defendant would appoint its own engineer, who would have complete control of design and quality of work; that defendant reserved the right to have removed from the job any Sollitt employee with whom it was dissatisfied either in regard to work or conduct on the job; that defendant "may at any time terminate this agreement without fault on the part of contractor (Sollitt);" that defendant had the right to determine whether there should be night or other overtime work and, also, to determine the terms, conditions and sources of purchase of all materials and rental equipment.

The contract further provided:

"The contractor (Sollitt) is also to assume the responsibility for directing and coordinating the work of the separate contractors. * * * The contractor shall work in close cooperation with the engineer. * * * This shall not in any way relieve the contractor of the obligation to expedite, inspect

and conclude the work in accordance with the plans and specifications."

November 27, 1956, plaintiff, a workman employed by Sollitt, ascended onto the roof of defendant's "sulfur building" to assist in lining up the location of the new building to be constructed nearby. The roof crashed, hurling plaintiff 50 feet to a concrete floor below.

At the time of injury, plaintiff was on Sollitt's payroll, with other Sollitt employees who were working on defendant's building project; plaintiff was paid by Sollitt from payroll funds furnished by defendant to Sollitt and, after his injury, plaintiff received workmen's compensation benefits under the policy for which defendant furnished the money to Sollitt for premium payments.

In granting defendant's motion to dismiss plaintiff's declaration, the court in its opinion stated:

"The contractor's position is comparable to that of a foreman who in place of a salary received a flat fee for his services, since the defendant reserved to itself the right to control the manner in which the work was to be done.  *  *  *

"In this case it seems obvious that the defendant was in fact the actual and legal employer of the plaintiff."

Question No. 1: *Did the court err in finding that the defendant was in fact the actual and legal employer of the plaintiff?*

Appellant contends a cost-plus-fixed-fee contract created between defendant and Sollitt, without plaintiff's knowledge or consent, could not deprive plaintiff of his remedy against defendant as a third-party tort-feasor "if such remedy otherwise existed," because the relationship of employer and employee, unless created by statute, is a contractual relationship (35 Am Jur, Master and Servant § 8, p 450) and

nothing Sollitt could do would make plaintiff the employee of defendant without plaintiff's assent (35 Am Jur, Master and Servant § 18, p 456).

Appellee claims that the contract had reserved to defendant the right of control over the work and employees of Sollitt and, therefore, under our decisions* was precluded from ·maintaining his action against defendant.

These cases do not sustain appellee's contention. Defendant did not hire plaintiff. Defendant did not direct plaintiff in his work. Defendant did not issue plaintiff's pay checks and only retained the right to object to plaintiff's conduct or workmanship. (See *Rockwell* v. *Grand Trunk Western R. Co.*, 253 Mich 144.)

The trial court erred in finding that the contract established defendant as the "actual and legal employer of the plaintiff" and that, therefore, under the terms of the contract plaintiff was precluded from · maintaining his action.

Question No. 2: *Do the provisions of the Michigan workmen's compensation act deny plaintiff his right of action against defendant?*

Section 10, part 1, of the workmen's compensation act (CLS 1956, § 411.10 [Stat Ann 1957 Cum Supp § 17.150]) provides:

"(a) Where any employer subject to the provisions of this act (in this section referred to as the principal), contracts with any other person (in this section referred to as the contractor), who is not subject to this act or who has not complied with the provisions of section 1 of part 4 and who does not become subject to this act or comply with the provisions of section 1 of part 4 prior to the date of the injury or death

---

* *Janik* v. *Ford Motor Co.*, 180 Mich 557 (52 LRA NS 294, Ann Cas 1916A, 669); *Rockwell* v. *Grand Trunk Western R. Co.*, 253 Mich 144; *Allen* v. *Kendall Hardware Mill Supply Co.*, 305 Mich 163; *Judis* v. *Borg-Warner Corporation*, 339 Mich 313; *White* v. *Bye*, 342 Mich 654.

for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed: Provided, That the term 'contractor' shall be deemed to include subcontractors in all cases where the principal gives permission that the work or any part thereof be performed under subcontract;

"(b) Where the principal is liable to pay compensation under this section, he shall be entitled to be indemnified by the contractor or subcontractor as the case may be, but the employee shall not be entitled to recover at common law against the contractor for any damages arising from such injury if he takes compensation from such principal. The principal, in case he pays compensation to the employee of such contractor, may recover the amount so paid in an action against such contractor."

Section 15 of part 3 of the act (CLS 1956, § 413.15 [Stat Ann 1957 Cum Supp § 17.189]), which was the 1952 amendment* permitting the employee injured by third-party tort-feasor to pursue his common-law remedy without being held to an election, reads in part:

"Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer

---

* PA 1952, No 155.—REPORTER.

to pay damages in respect thereof, the acceptance of compensation benefits  *   *   *   shall not act as an election of remedies, but such injured employee *   *   *   may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section."

Appellant cites *Sweezey* v. *Arc Electrical Construction Co.*, 295 NY 306 (67 NE2d 369, 166 ALR 809), where a subcontractor had failed to provide compensation insurance and the employee of the subcontractor brought a common-law action against the general contractor, it was urged that because of the fact the contractor had become liable for compensation he could not be a third party.  The court held otherwise, however, saying (pp 310, 311):

"The word 'employee' denotes contractual relationship.  Consequently it cannot be held that the employees of Baker & Yettman are also employees of Eklund and, therefore, entitled to compensation under a policy covering only the employees of Eklund.  The liability of the contractor to employees of his subcontractor is a secondary one imposed upon him by law.  That this does not cause the relationship of employer-employee to spring up has been recognized by this court in *Clark* v. *Monarch Engineering Co.*, 248 NY 107 (161 NE 436)."

Appellant also cites *Clark* v. *Monarch Engineering Co.* (1928), 248 NY 107 (161 NE 436), discussed in 151 ALR 1359, 1360, which arose under a law similar to ours making a contractor liable for compensation to employees of subcontractors unless the subcontractor provides for such compensation, wherein it was held that even though the subcontractor did provide for compensation, the contractor was not removed from the class designated as a "third party."

The New York supreme court (129 Misc 145, 149 [221 NYS 93], affirmed in 222 App Div 713 [224 NYS 773], and in 248 NY 107, *supra*) pointed out:

"Such a provision  *  *  *  would not create the relation of employee and employer between the general contractor and the employee of the subcontractor where, from the very nature of the definitions of the terms 'employer' and 'employee,' such relationship does not exist."

Appellee's comment on the 2 New York cases above mentioned by appellant is confined to the following brief paragraph:

"Of the New York cases cited by appellant, only *Sweezey* v. *Arc Electrical Construction Co.*, 295 NY 306 (67 NE2d 369, 166 ALR 809) is in point. In the *Sweezey Case,* however, it was quite clear on the facts that the employee was in practical effect only the employee of the subcontractor, and the court quoted (p 311) Judge Lehman's comment in *Clark* v. *Monarch Engineering Co.*, 248 NY 107, 109 (161 NE 436), that 'It is not claimed that the general contractor either hired or had the right to direct him.' "

As pointed out above, defendant did not hire or direct plaintiff in his work but only had the right to object to his conduct or workmanship and to demand that he be removed from the job.

The same question presented was recently decided by the United States district court in *Miller* v. *J. A. Utley Construction Co.* (ED Mich), 154 F Supp 138, where the court stated:

"The question presented is whether the general contractor is regarded by the statute as an 'employer' of his subcontractor's employees or as a 'third party' because if he is regarded as a third party he is not relieved of his common-law tort liability.

"Although it is a question of first impression in Michigan, there are numerous precedents in other States which have similar statutes. These decisions have held that a general contractor is not relieved of common-law tort liability to his subcontractor's employees where the subcontractor's employees are

covered by a workmen's compensation act, even
when, as here, the employee has received workmen's
compensation for the injury.    *   *   *

"Although it seems paradoxical, while a general
contractor carries the risk of personal injury judg-
ments in common-law actions by hiring subcon-
tractors who are covered by the workmen's compen-
sation act, he is only held to the limited employer's
liabilities under the act if he lets his work to sub-
contractors who do not comply with, or who are not
covered by, the act.   However, I am not permitted to
challenge the wisdom of the Michigan legislature."

Plaintiff set forth his claim clearly in his decla-
ration—namely, that the sulphur building was
equipped with a stairway leading to a canopy open-
ing onto the roof; that the flat roof had every appear-
ance of being constructed of strong and durable
material with no warning to the contrary; that de-
fendant owed a duty to plaintiff as an invitee; that
defendant knew, or in the exercise of reasonable care,
should have known of the unsafe condition of the
roof and failed to maintain its premises in a safe
condition, thereby causing serious damage to plain-
tiff.

Plaintiff was denied the right to prove his claim
because the court held that the provisions of the
contract between Sollitt and defendant and the pro-
visions of the Michigan workmen's compensation act
denied him that right.

The contract and the statute do not justify the
trial court's denial and we, therefore, reverse and
remand for new trial.   Costs to appellant.

DETHMERS, C. J., and CARR, J., concurred with
KELLY, J.

BLACK, J. (*concurring*).   I agree with plaintiff that
the contract between defendant and the Sumner Sol-
litt Company does not affect or abrogate his right to

maintain the cause upon which he declares. The reason is simple. Plaintiff was not a party to the contract. Whatever its terms, he could not and did not become an employee of defendant by force thereof. To become defendant's employee for any legal purpose, including those of the workmen's compensation law, it was necessary either that he enter into a contract of employment with defendant, express or implied, or that he become defendant's employee by operation of law, in this case section 10, subd (a) of part 1 of the workmen's compensation law (CLS 1956, § 411.10 [Stat Ann 1957 Cum Supp § 17.150]). So, there being no claim of contractual relationship between plaintiff and defendant other than by the terms of defendant's said contract with Sumner Sollitt, the only question before us is whether, in these pleading-presented circumstances, plaintiff at the time of injury was a statutory employee of defendant within the intent and purpose of said section 10, subd (a).

By force of plaintiff's contract of employment with Sumner Sollitt he was an employee of that company when his injury was sustained. That injury was received in the course and out of his employment by Sumner Sollitt. Sumner Sollitt had duly become subject as an employer to the workmen's compensation law and had provided for its employees—plaintiff included—the compensable benefits of that law. Such status consequently prevented plaintiff's becoming an employee of defendant within or for the purposes of said section 10, subd (a).

This case and its presented question may be recapitulated properly this way: Prior to plaintiff's injury the parties plaintiff and defendant had never entered into a contract of employment, expressly or otherwise; no provision of the workmen's compensation law had created the relation of employer and employee between these litigant parties, and no other

provision of law or contractual undertaking had theretofore created such relationship. Plaintiff and defendant accordingly remained legal strangers so far as concerns the workmen's compensation law. Their legal relationship as of the time of plaintiff's injury was and is determinable according to the common law.

So far as applicability of said section 10, subd (a) is concerned, I would adopt Judge Levin's eminently thoughtful opinion in *Miller* v. *J. A. Utley Construction Co.* (ED Mich), 154 F Supp 138* That opinion is supported by the weight of relevant judicial interpretation of these "contractor-under" statutes. This the annotator has noted in the successive annotations appearing in 151 ALR 1359 and 166 ALR 813. The heading of the latter is "Common-law remedy against general employer by employee of independent contractor or against [principal] contractor by employee of subcontractor, as affected by specific provisions of workmen's compensation act relating to employees of such persons." A correct summary of the pertinent cases is given on the same page, this way, by the annotator:

"The later cases bear out the observation made in the original annotation that the cases involving compensation acts imposing liability upon the principal contractor for compensation to employees of independent contractors or subcontractors in case he does not require the independent contractor or subcontractor to carry compensation insurance are generally in favor of the retention of the common-law rights of the employee against the principal."

We should emphasize that the presented question comes here on appeal from an order granting defendant's motion to dismiss. No testimony was taken for

---

* Judge Holtzoff has recently considered the question and has ruled as Judge Levin did. *Thomas* v. *George Hyman Construction Co.* (DC DC), 173 F Supp 381.

the purpose of determining plaintiff's actual status at the time he undertook and proceeded with the work as alleged in his declaration (see *Mathews* v. *United Association,* 351 Mich 293). There might, in fact, have been an implied contract of employment between plaintiff and defendant which these pleadings do not disclose, and there lies the trouble with the practice of attempted determination of decisive questions of law, on bare pleadings, when a testimonial inquiry possibly might disclose what such pleadings do not. Our decision, then, should be confined to a determination that plaintiff's declaration is good as against defendant's said motion.

For stated reasons I concur in reversal.

VOELKER and KAVANAGH, JJ., concurred with BLACK, J.

SMITH, J. (*concurring*). I concur in the reversal of this case and its remand for new trial. In view thereof I will comment upon the test to be employed in the determining of the crucial issue in the case.

The broad problem here presented is one coming to our Court with increasing frequency as the social legislation continues to phrase obligations, or lack thereof, in terms of the employer-employee relationship.

The earlier cases tested this relationship through application of the "control" factor, originally a test for tortious liability, having its roots in the relationship of the apprentice to his master in early English industrial society. As applied to today's complex economy of the assembly line, of dispersed industrial operations, of concentrated operations but with semiautonomous "departments" or branches, and of general contractors who, in turn, employ subcontractors and sub-subcontractors, the "control" test is often meaningless, usually ambiguous, and always suscept-

ible of paperwriting evasions. Consequently we have abandoned it. *Tata* v. *Muskovitz,* 354 Mich 695. The test is now one of economic reality. *Powell* v. *Employment Security Commission,* 345 Mich 455, dissent, 462, 478; *Salmon* v. *Bagley Laundry Company,* 344 Mich 471, dissent, 475; *United States* v. *Silk* (*Harrison* v. *Greyvan Lines, Inc.*), 331 US 704 (67 S Ct 1463, 91 L ed 1757). This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one. See, also, *Pazan* v. *Unemployment Compensation Commission,* 343 Mich 587, dissent 592.

The determination so to be made, the relationship as a matter of economic reality, cannot, in the usual case, be made upon pleadings and affidavits alone. In this respect the closing words of my Brother BLACK's opinion herein are much in point.

I concur in reversal and remand.

EDWARDS, J., concurred with SMITH, J.