### SMITH v MARTINDALE

1. WORKMEN'S COMPENSATION—EXCLUSIVE REMEDY—FELLOW EM-
PLOYEES—RESPONDEAT SUPERIOR.

   Workmen's compensation is the exclusive remedy for an injured
   employee from his employer; however, where an employee was
   injured by the actions of another worker at a construction site
   and the other worker was employed by someone other than the
   injured employee's employer, then the injured employee might
   recover further by suing the other worker's employer under the
   *respondeat superior* doctrine.

2. MASTER AND SERVANT—ECONOMIC REALITY TEST—ACTUAL EM-
PLOYER—CONTROL OF WORKER—PAYMENT OF WAGES—HIRING
AND FIRING.

   The economic reality test has been adopted by Michigan courts to
   discern an employment situation; among the relevant factors
   which demonstrate an employment relationship are: (1) control
   of a worker's duties, (2) the payment of wages, (3) the right to
   hire and fire and the right to discipline, and (4) the perform-
   ance of the worker's duties as an integral part of the employ-
   er's business towards the accomplishment of a common goal.

3. MASTER AND SERVANT—CRANE OPERATOR—EQUIPMENT LEASING
COMPANY—ACTUAL EMPLOYER—ECONOMIC REALITY TEST.

   A crane operator should have been considered to be an employee
   of a firm in the business of renting out cranes and crane
   operators as an entity to construction companies and not an
   employee of the construction company using this service where
   the facts of the case indicate under the economic reality test
   that the leasing firm had control of the operator's duties, that
   the leasing firm paid the operator's wages and that the leasing
   firm had the right to hire and fire and discipline the operator,
   even though the fourth factor of the economic reality test
   indicated a possible employment situation between the crane

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Master and Servant § 415.
[2–4] 81 Am Jur 2d, Workmen's Compensation §§ 169, 170.
[4] 73 Am Jur 2d, Summary Judgment § 13.

operator and the construction company; the economic reality test views its four elements as a whole, assigning primacy to no single one.

4. JUDGMENT—SUMMARY JUDGMENT—MASTER AND SERVANT—CRANE OPERATOR—NO FACTUAL DISPUTE—COURT RULES.

A motion for summary judgment was the proper means to determine whether a defendant crane operator was an employee of a leasing company which leased cranes and operators as units or an employee of the construction company which was leasing the crane with an operator from the leasing company where the record and the agreed statement of facts showed that there was no dispute as to any of the underlying facts (GCR 1963, 117.2[3]).

Appeal from Genesee, Harry B. McAra, J. Submitted January 3, 1978, at Lansing. (Docket No. 77-1541.) Decided March 7, 1978. Leave to appeal applied for.

Complaint by Michael Smith and Pamela Smith against Don Martindale and R. L. White Erectors, Inc., for damages for personal injuries suffered by Michael Smith. Summary judgment for defendants. Plaintiffs appeal. Affirmed in part, reversed in part, and remanded.

*H. William Martin,* for plaintiffs.

*Neal & Lengauer* (by *Paul Lazar),* for defendants.

Before: V. J. BRENNAN, P. J., and D. E. HOLBROOK and R. B. MARTIN,* JJ.

D. E. HOLBROOK, J. Plaintiffs appeal from an April 19, 1977, order granting the summary judgment motion of R. L. White Erectors, Inc. Plaintiffs' amended complaint claimed damages from an injury to Michael Smith caused by Don Martindale's negligence in operating a crane on a con-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

struction project. Michael Smith's employer, Freedland Steel, was the general contractor for the project and had rented the use of a crane and operator (Don Martindale) from White. Freedland voluntarily paid workmen's compensation benefits to plaintiff and thereafter plaintiffs commenced a third-party action against Martindale and R. L. White Erectors. Plaintiffs sought to hold R. L. White Erectors vicariously liable because of the employer-employee relationship between the corporation and Martindale. White moved for summary judgment on the grounds that, as a matter of law, at the time of the accident, Don Martindale was the employee of Freedland and hence plaintiffs' remedy was through Freedland's worker's compensation: The trial court granted the summary judgment motion in an opinion dated April 14, 1977.

Michael Smith was a construction worker employed by Freedland Steel Company. General Motors contracted with Freedland Steel for construction work at the A. C. Spark Plug Plant in Flint, Michigan. On January 24, 1975, Michael Smith was working at the construction site when he was hit on the head with a steel "bracing angle" which fell from a steel trestle. The trestle was being positioned by a crane which was operated by Don Martindale and owned by R. L. White Erectors, Inc. Freedland Steel fabricated the trestle and the "bracing angle". Michael Smith received a skull fracture and a scalp laceration.

R. L. White Erectors, Inc., is in the business of leasing cranes and persons to operate them. Don Martindale had worked for R. L. White three years as a crane operator. R. L. White paid Martindale's wages, along with deducting his social security and income taxes from his check. Additionally, R. L. White paid Martindale's worker's compensation

insurance. On January 23, 1975, Freedland rented the services of a crane and operator from White. White instructed Don Martindale and an "oiler", Rick White, to report to the A. C. construction site on January 24, 1975. Don Martindale and Rick White transported the crane to the site. On their second day on the job, January 25, Don Martindale and Rick White returned to the site without further instructions from White.

Under the rental contract, Freedland paid White a set rate for the crane and an hourly rate set at the union wage for Don Martindale and Rick White.

According to plaintiffs, Don Martindale and Rick White had some discretion in operating the crane in that Martindale could refuse to operate the crane in any way he felt would harm it. However, in the actual use of the crane for placement of the trestle, Freedland's employees by a recognized set of hand signals, directed the crane operator as to where the trestle should go.

R. L. White Erectors, Inc., chose Don Martindale as the operator of the crane. Freedland Steel Company had no power to fire him, but could have him removed from the job if it felt it was necessary to do so. Although officers of R. L. White Erectors, Inc., visited the construction site on certain occasions, R. L. White apparently exercised no control or supervision over the construction project.

After reviewing the above facts, the trial court determined that Don Martindale was actually the "loan servant" or employee of Freedland and granted White's motion for summary judgment.

The first issue raised on appeal is whether an employee-crane operator of a company in the business of renting cranes and crane operators be-

comes the "loaned servant" of the company renting the crane and operator.

The determination of who employed Don Martindale is significant in that it controls plaintiffs' ability to recover. Plaintiffs have worker's compensation rights with respect to Michael Smith's employer, Freedland Steel. The worker's compensation benefits are plaintiffs' exclusive remedy against Freedland. Plaintiffs might recover further if Don Martindale was White's employee, and if Don Martindale was negligent, by suing White under the *respondeat superior* doctrine. However, if Don Martindale was a Freedland employee, the *respondeat superior* doctrine is of no value to plaintiffs because of the exclusive nature of the worker's compensation remedy. Also, if Don Martindale and Michael Smith are coemployees for Freedland, then plaintiffs are barred from recovering from Don Martindale by reason of the worker's compensation act.

Both plaintiffs and defendants agree that the economic reality test is applicable to the case at bar. However, plaintiffs claim that the test indicates that Martindale is R. L. White's employee whereas defendants maintain that Martindale is Freedland's employee.

The economic reality test has been adopted by the Michigan courts to discern an employment situation. *Goodchild v Erickson,* 375 Mich 289, 293; 134 NW2d 191 (1965), *Cronk v Chevrolet Local 659,* 32 Mich App 394, 398; 189 NW2d 16 (1971), *lv den,* 385 Mich 784 (1971), *McKissic v Bodine,* 42 Mich App 203, 205–208; 201 NW2d 333 (1972), *lv den,* 388 Mich 780 (1972). Under the economic reality test, the Michigan Supreme Court in *Askew v Macomber,* 398 Mich 212, 217–218; 247 NW2d 288 (1976), listed relevant factors to be used to discern an employment situation:

"(1) [C]ontrol of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal."

We review each factor as it relates to the facts in the instant case to determine whether Don Martindale was an employee of R. L. White or Freedland Steel at the time of the accident.

(1) *Control of a worker's duties.*

Prior to the economic reality test, control of the employee was the test used. Today, control is merely part of the test. *Askew, supra.* A case decided under the control test was *White v Bye,* 342 Mich 654; 70 NW2d 780 (1955), a case which was factually very similar to the case at bar. In *White v Bye,* the plaintiff was an employee of the J. A. Utley Company, who was the general contractor for the construction of a plant for General Motors in Flint, Michigan. Utley leased a crane and operator from Bye Excavating for work on the project. Another contractor on the project was the Wilcox Company. Wilcox borrowed from Utley the crane and operator rented from Bye for a very small job. Such borrowing was common in large construction projects. While the crane operator was using the crane, a terminal hook broke loose and struck the plaintiff. At the time the crane operator was being directed by hand signals from Wilcox's employees. Plaintiff brought an action against Bye on the theory that their employee, the crane operator, was negligent in the operation of the crane. Bye argued that the operator was no longer their employee at the time of the accident. The Court ruled in favor of the plaintiff White therein.

Defendants and the lower court distinguished *White v Bye* on the grounds that Wilcox had no

formal relationship with Bye, whereas R. L. White herein had a formal relationship with Freedland. Although the two cases are not totally on all fours, we hold that the Court's reasoning and findings in *White v Bye* are instructive as to the question of control in the instant case. The Court in *White, supra,* at 660–663 stated:

"The facts pertinent to this issue are that: Bye owned the crane and hired the operator and paid his wages; the crane and operator were hired as a unit, with Bye paying the maintenance, insurance, et cetera; Bye was in the business of renting cranes with his own skilled employees to operate them; the operator was the only person who could operate the controls of the crane; Utley or Wilcox could not discharge the operator from Bye's employ though they could apparently force Bye to put another operator in his place; Wilcox gave hand signals and directions for moving the reel of cable to indicate to the operator where the crane was to go; the operator could refuse to do any job which he felt would injure the crane; and it was customary on a building project of this kind for a lessee of a crane to accommodate other contractors by lending them his crane either for a charge or in some cases for nothing. Bye contends that the operator ceased being his servant because Wilcox or Utley 'exercised detailed on-the-spot control of the actual operation' and it was their work that was being done at the time. We are convinced, however, that the directions and signals on the scene were not sufficiently significant, in and of themselves, to establish the master-servant relationship. The noise and the nature of the work made the directions and signals from below necessary. In *Rockwell v Grand Trunk Western Railway Co, supra,* [253 Mich 144; 234 NW 159 (1931)] the defendant maintained an electric crane for the unloading of heavy freight and the plaintiff trucker was unloading a car. In respect to defendant's liability, as master, we stated (p 148):

" 'The plaintiff had no control over the crane or the operator except that by signals he could direct when and in what direction the beams should be hoisted.

Beyond this he was not allowed to interfere with its operation.'

"In the landmark and oft-quoted case of *Standard Oil Co v Anderson* (1909), 212 US 215 (29 S Ct 252, 53 L ed 480), the court considered this problem as applied to the Standard Oil Company whose ship was being loaded by means of its own winch, operated by its own man, though the stevedoring company gave signals and directions and supplied the tackle. The court stated in holding the company liable (pp 222, 226):

" 'Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.

\* \* \*

" 'Much stress is laid upon the fact that the winchman obeyed the signals of the gangman, who represented the master stevedore, in timing the raising and lowering of the cases of oil. But when one large general work is undertaken by different persons, doing distinct parts of the same undertaking, there must be cooperation and coordination, or there will be chaos. The giving of signals under the circumstances of this case was not the giving of orders, but of information, and the obedience to those signals showed cooperation rather than subordination, and is not enough to show that there has been a change of masters.'

\* \* \*

"In the instant case, Bye furnished the crane, operator and the operator's know-how as an entity. The operator was hired by and remained under Bye's control. Bye was in the business of lifting and transporting of objects for other persons by means of cranes. He furnished these services and not the operator and crane individually. In the *Rockwell Case, supra,* we said (p 148):

" 'In the instant case the defendant furnished the crane to increase its business in the carrying of heavy weight. It selected a man who had been instructed in its use to care for and operate it. \* \* \* While operating it, he was engaged in the furtherance of the defendant's business. He did nothing that the plaintiff was required

to do. He knew the safe way and the unsafe way to operate it. He was selected by the defendant, paid by the defendant, and could be discharged whenever it pleased the defendant.' "

Therefore, we hold that the control of Martindale was by R. L. White and not Freedland.

(2) *Payment of wages.*

Martindale's wages were paid to him by R. L. White. White also deducted social security and income taxes from his check. Martindale did not receive any money from Freedland Steel. Freedland claims that it was required to pay R. L. White for the number of hours worked by Martindale at the construction site and that it was in effect paying Martindale's wages. However, we do not agree. Martindale was paid by a check issued by R. L. White and White was responsible for the withholding taxes. We hold that the most reasonable view of this relationship is that R. L. White paid Martindale's wages.

(3) *Right to hire and fire and discipline.*

Allen Clark, a vice-president of Freedland Steel, was questioned in a deposition in part as follows:

"Q *[Plaintiffs' attorney]* Do you know who directed Don Martindale to report to the A. C. Spark Plug Plant to work that job?

"A Well, I'm assuming his supervisor or someone at the company where he's employed.

"Q Would you or Mike Davis have any authority to fire Don Martindale from the R. L. White Company?

"A Would we have authority?

"Q Yes.

"A Yes.

"Q To fire him from his own company?

"A No. No. I'm sorry. I misunderstood you. No, none whatsoever.

"Q So whether or not he worked is up to his company, not up to you?
"A That's correct."

Thus, Freedland had no right to fire Martindale. As to the disciplining of Martindale, by Freedland, Clark was questioned as follows:

"Q *[Plaintiffs' attorney]* If you didn't like the way Don Martindale or anybody else was running their crane, what procedures would you follow in getting them off the premises?
"A There would be various types of ways. It would be according to the circumstances. You would possibly go to the owner of the equipment you rented or if it was severe enough, why, you just politely asked him to leave the job and if not, you'd take other action accordinly *[sic]."*

Thus, although Martindale could be asked to leave the job, any disciplining was up to White. We do not agree with defendants that the right of removal is equal to the right to fire, hire and discipline. The firing and disciplining of Martindale was up to R. L. White, not Freedland.

(4) *The performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.*

Martindale's performance of his duties, *i.e.,* operation of the crane, was an integral part of Freedland's business towards accomplishment of a common goal, *i.e.,* construction of a building at the A. C. Spark Plug Plant. Thus, the fourth factor indicates a possible employment situation between Martindale and Freedland. However, as Justice SMITH stated in *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959):

"Control is a factor, as is payment of wages, hiring

and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."

Also see, *Askew, supra,* p 220. Considering the four factors, assigning primacy to no single one, we rule that Martindale was the employee of R. L. White Erectors, Inc.

The next issue plaintiffs raise is the question of whether a person is a "borrowed servant" represents a question of fact precluding summary judgment under GCR 1963, 117.2(3).

This case is on appeal from the granting of defendants' summary judgment motion under GCR 1963, 117.2(3). The trial judge held that as a matter of law Don Martindale was Freedland's employee. Plaintiffs claim a question of fact existed as to whose employee Don Martindale was.

This issue was raised in *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 261–262; 169 NW2d 326 (1969), wherein the Court stated:

"In the case at bar, the record contains numerous interrogatories, depositions, and affidavits, which set out the underlying events and circumstances in great detail. These,. as well as the agreed statement of facts submitted for purposes of this appeal, reveal that there is no dispute as to any of the underlying facts. Plaintiff's only contention is that on the basis of the agreed facts, defendant should not be labeled an 'employer' within the meaning of the workmen's compensation law. This is not a question of fact for a jury to decide; it is a question of law which must ultimately be decided by the courts. As such, it is appropriately decided under a motion for summary judgment where full affidavits and depositions disclose no disputed issue of fact."

See also, *Askew, supra,* at 217.

Thus, under the facts and circumstances of the instant case, the motion for summary judgment was a proper means to determine the issue as to whose employee Martindale was. However, the trial judge's decision that Martindale was Freedland's employee was in error.

Affirmed in part and reversed in part. Remanded for trial in accordance with this opinion. No costs, neither party prevailing fully.