CRONK *v.* CHEVROLET LOCAL 659

1. MASTER AND SERVANT—EXISTENCE OF RELATIONSHIP—SOCIAL LEG-
ISLATION—CONTROL TEST—ECONOMIC REALITY TEST.

   The control test has been abandoned as the exclusive criterion
   by which the existence of an employer-employee relationship
   is determined for purposes of remedial social legislation; the
   test is one of economic reality.

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION—ECONOMIC
REALITY TEST—ELEMENTS.

   The determination of whether an employer-employee relationship
   exists for purposes of the workmen's compensation act and
   other remedial social legislation is to be made by using the
   economic reality test; the elements that are considered when
   applying the test are (1) control, (2) payment of wages, (3)
   the right to hire and fire, and (4) the right to discipline;
   the existence of the relationship is determined by viewing these
   elements as a whole, assigning primacy to no single one.

3. WORKMEN'S COMPENSATION—EMPLOYEE-EMPLOYER RELATIONSHIP
—UNION—UNION EXECUTIVE BOARD—ECONOMIC REALITY TEST.

   No employer-employee relationship existed for purposes of the
   workmen's compensation act between a union local and a mem-
   ber of its executive board where the union had not hired
   the plaintiff, the plaintiff being an elected official, the union
   could not fire the plaintiff, the plaintiff was not paid for his
   services, and the plaintiff was not subject to the union's con-
   trol as "control" has been defined in reference to the existence
   of the employer-employee relationship.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 53 Am Jur 2d, Master and Servant § 2.
　58 Am Jur, Workmen's Compensation § 132 *et seq.*
[5, 6] 3 Am Jur 2d, Agency § 267.
[6, 9] 53 Am Jur 2d, Master and Servant § 139 *et seq.*
[7] 48 Am Jur 2d, Labor and Labor Relations § 324.
[8] 48 Am Jur 2d, Labor and Labor Relations § 334.

4. WORKMEN'S COMPENSATION—EMPLOYEE-EMPLOYER RELATIONSHIP —UNIONS.

Dismissing for lack of jurisdiction a complaint for damages from an assault and battery by a member of a union local's executive board against the union was error where, under the economic reality test, no employer-employee relationship existed between the union and the member of the union's executive board and, thus, the exclusive remedy of the workmen's compensation act did not apply.

5. PRINCIPAL AND AGENT—TORTIOUS CONDUCT—LIABILITY.

A principal is responsible for the torts of his agent which are committed within the scope of the agency.

6. PRINCIPAL AND AGENT—DAMAGE—DAMAGE TO AGENT—LIABILITY.

A principal is subject to the same liability to an agent who is not a servant for damage caused by the tortious conduct of his servant, of other agents, and of other persons doing work for him, as he is to third persons.

7. PRINCIPAL AND AGENT—UNIONS—DAMAGE TO AGENT—ASSAULT AND BATTERY.

Defendant union local was liable to a member of its executive board for damages caused by an assault and battery on him committed by another elected member of the executive board where the altercation arose out of an executive board meeting, the assault and battery occurred just after the meeting concluded and on the premises controlled by the union local, and where there was sufficient evidence to establish that the acts of the tortfeasor were in furtherance of union business in that he intended to prevent embarrassment to the union by silencing plaintiff who had made serious allegations of illegal acts by union officers at the meeting.

8. LABOR RELATIONS—UNIONS—EXHAUSTION OF INTRA-UNION REMEDIES—TORT ACTIONS.

A union member must exhaust his intra-union remedies before the courts are available to him only where: (1) the employer is seeking to enforce rights under a union contract, (2) the claim is some impropriety of union management, or (3) the claim is for alleged wrongful discharge; however, where a union member sues the union for damages caused by an assault and battery committed on him by a union agent, plaintiff does not have to exhaust his union remedies before bringing an action for tort in the courts, because his action is not based on internal union problems.

9. Labor Relations—Unions—Principal and Agent—Damages to Agent—Liability.

  A jury verdict awarding damages to a member of a union local's executive board against the union local for an assault and battery committed on him by another elected member of the board must stand even if there was not sufficient evidence to find union guilty of negligence in failing to use reasonable care to prevent injuries to the plaintiff where the court instructed the jury that liability could be based on either the union's liability for the individual's acts within the scope of his employment or the union's negligent failure to exercise due care to prevent injuries to plaintiff and where there was sufficient evidence to support liability based on the principal-agent theory.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 March 4, 1971, at Lansing. (Docket Nos. 6815, 7125.) Decided April 20, 1971. Leave to appeal denied, 385 Mich 785.

Complaint by Frederick Cronk against Chevrolet Local Union #659, United Automobile Aerospace and Agricultural Implement Workers of America, Congress of Industrial Organizations, Harold Brown, and three other persons, for damages from an assault and battery following a union meeting. Judgment of no cause of action in favor of individual defendants except Harold Brown. Jury verdict against the union local and Harold Brown. Judgment notwithstanding the verdict entered as to the union local and Harold Brown. Plaintiff appeals. Union local cross-appeals as of right and Harold Brown cross-appeals by leave granted. Reversed and remanded for reinstatement of the jury verdict.

*Fortino, Plaxton & Moskal,* for plaintiff.

*Andrew J. Transue,* for defendant Chevrolet Local 659.

*William Goldberg,* for defendant Harold Brown.

Before: R. B. BURNS, P. J., and J. H. GILLIS and T. M. BURNS, JJ.

T. M. BURNS, J.   Plaintiff brought an action for personal injuries against Chevrolet Local Union #659 and four individuals in the Genesee County Circuit Court.   After a 3-1/2-week trial, the jury returned a verdict of no cause of action as to three of the individual defendants and a verdict of $31,560 for the plaintiff against the defendant Union Local #659 and defendant Harold Brown.

At the close of proofs, defendants moved for a directed verdict on the ground that plaintiff's exclusive remedy was under the Workmen's Compensation Act.   The court reserved decision on the motion and allowed the case to go to the jury.   After the verdict in plaintiff's favor, defendants moved for a judgment notwithstanding the verdict, a new trial or a *remittitur.*   The court granted the motion for the judgment notwithstanding the verdict on the ground that plaintiff and defendant Brown were employees of Union Local #659, and, as such, the exclusive remedy of plaintiff against both the defendant union local and the defendant Brown was under the Workmen's Compensation Act.[1]

The plaintiff appeals as of right from the judgment of the trial court dismissing the case for lack of jurisdiction.   Defendant Local Union #659 cross-appealed as of right, defendant Harold Brown was granted leave to file a delayed cross-appeal.

Plaintiff, on his appeal, contends that neither he nor Brown were employees of the union local within the meaning of the Workmen's Compensation Act.

Plaintiff was an employee of the Chevrolet Divi-

---

[1] MCLA § 411.1 *et seq.* (Stat Ann 1968 Rev § 17.141 *et seq.*).

sion of General Motors Corporation in Flint, Michigan. In May, 1963, plaintiff was elected unit chairman of the Frame Stamping Unit of the Chevrolet Division and, as such, was authorized to sit on the Executive Board of Union Local #659. Defendant Harold Brown was also an elected official of the Executive Board of defendant union local. Both plaintiff and defendant Brown, as members of the Executive Board, were under a duty to attend monthly meetings. However, neither party received any salary from the union for performing their duties as members of the board.

Plaintiff and defendant Brown both attended a meeting of the Executive Board in December, 1963. Following the meeting which was a heated one, an altercation occurred which resulted in injuries to the plaintiff. Plaintiff then brought this suit which resulted in the verdict of $31,560, which was subsequently vacated by the trial judge.

The determination of the master-servant relationship for purposes of the Workmen's Compensation Act no longer depends upon control. Rather, the court looks to the "economic reality" of the relationship:

"We have, however, abandoned the control test as the exclusive criterion by which the existence of an employee-employer relationship, for purposes of remedial social legislation, is determined. See *Tata* v. *Muskovitz* (1959), 354 Mich 695, which adopted as the law of this state Mr. Justice TALBOT SMITH's dissenting opinion in *Powell* v. *Employment Security Commission* (1956), 345 Mich 455, 478: '*The test is one of economic reality.*'" (Emphasis supplied.) *Goodchild* v. *Erickson* (1965), 375 Mich 289, 293.

Justice SMITH later discussed what was meant by the term "economic reality":

"This is not a matter of terminology, oral or
written, but of the realities of the work performed.
Control is a factor, as is payment of wages, hiring
and firing, and the responsibility for the mainte-
nance of discipline; but the test of economic reality
views these elements as a whole, assigning primacy
to no single one."[2]

The Supreme Court in *Goodchild* v. *Erickson*
(1965), 375 Mich 289, 293, in finding the existence
of an employer-employee relationship stated:

"Viewed in terms of economic reality, we cannot
disagree with the appeal board's conclusion that for
purposes of assessing liability under the workmen's
compensation act Goodchild was an employee of
Erickson at the time of his injury. Goodchild was
a regular full-time employee of Erickson, received
a single pay check from Erickson each week, and
was directed by Erickson in unloading the  *  *  *
van."

We therefore find the Supreme Court, under the
"economic reality" test, looking to the following
elements when determining whether or not the em-
ployer-employee relationship exists: (1) control;
(2) payment of wages; (3) the right to hire and
fire; and (4) the right to discipline.[3]

In the instant case plaintiff was not hired by the
union; he was an elected official. Neither could the
union fire plaintiff. Plaintiff was not paid for his
services[4] and was not subject to the union's control

---

[2] *Schulte* v. *American Box Board Company* (1959), 358 Mich 21,
33 (concurring opinion).

[3] See also: *Gottlieb* v. *Arrow Door Company* (1961), 364 Mich
450; *Industro-Motive Corporation* v. *Wilke* (1967), 6 Mich App 708;
*Renfroe* v. *Higgins Rack Coating & Manufacturing Company, Inc.*
(1969), 17 Mich App 259.

[4] Plaintiff, in response to defendants' motion for summary judg-
ment, submitted a sworn affidavit stating that he had never received
payment for attending meetings of the Executive Board. The pur-
pose of the affidavit was, of course, to rebut defendants' contention
that plaintiff was an employee.

as that term has been defined in reference to the existence of the employer-employee relationship. We therefore find, under the "economic reality" test, that plaintiff was not an employee of the defendant union local and the circuit court was in error when it dismissed the case for lack of jurisdiction.

Defendants contend, however, by way of cross-appeal, that even if the circuit court was competent to hear the case, several errors committed below should prevent this court from remanding for a reinstatement of the jury verdict. Defendants raise the following issues:

I. Was there any evidence showing liability of defendant union to be submitted for consideration of the jury?

II. Is there any evidence that the conduct of the individual defendants was within the scope of their employment by the union?

III. Should the court have granted the motion of defendant union for accelerated judgment of dismissal, or in the alternative, a summary judgment on the ground that plaintiff failed to exhaust his intra-union remedies?

IV. Is there any evidence that defendant union was negligent?

---

A codefendant did testify that members of the Executive Board did receive payment for attending meetings. However, the issue of whether or not plaintiff was an employee of the union did not arise until after the trial and the testimony was only elicited in an offhand manner while the witness was being examined by defendants' attorney as to the circumstance surrounding the altercation. Therefore, defendants' reliance on the testimony as establishing that plaintiff received payment for attending meetings is not warranted.

In any event, we do not consider plaintiff's receipt of any payment for attending meetings, whether the payments be deemed wages or payments for expenses only, to be determinative in light of defendant union's lack of control and its inability to hire and fire the plaintiff as well as its inability to discipline him. In terms of "economic reality", therefore, we would still be constrained to find that plaintiff was not an employee in terms of the Workmen's Compensation Act even if it had been conclusively established that plaintiff received payments from the union for attending meetings.

We will combine Issues I and II since they must be considered together in order to arrive at a decision.

I. *Was there any evidence showing liability of defendant union to be submitted for consideration of the jury?*

II. *Is there any evidence that the conduct of the individual defendants was within the scope of their employment by the union?*

Just as a master is responsible for the torts of his servant which are committed within the scope of employment, a principal is responsible for the torts of his agent which are committed within the scope of the agency. 3 Am Jur 2d, Agency, § 267 p 631. In the Restatement of Agency 2d, § 472, the rule is stated:

"A principal is subject to the same liability to an agent who is not a servant for damage caused by the tortious conduct of his servants, of other agents, and of other persons doing work for him, as he is to third persons."

Thus, if the assault and battery was committed within the scope of the agency, the union, as principal, would be liable to the plaintiff, its agent.

Defendant union local does not claim that the principal-agent relationship does not exist, but rather that the union is not responsible because the altercation took place after the meeting was concluded. However, the altercation arose out of the Executive Board meeting. The assault took place just after the meeting concluded and occurred on the premises controlled by the principal union local. Plaintiff also introduced evidence which, if believed, would establish that plaintiff had made serious

allegations of illegal acts by union officers and that defendant Brown had intended to silence the plaintiff to prevent embarrassment to the union. There was sufficient evidence, therefore, if believed, to establish that the acts and motive of defendant Brown were in furtherance of the business of the union local.

Defendants rely on *Sands* v. *Abelli* (SD NY, 1968), 290 F Supp 677, as standing for the proposition that the union should not be held liable for the assault and battery. However, that case involved the interpretation of a Federal statute, is factually distinguishable, and, in any event, is in no way binding upon this Court. We therefore find no merit in the first two issues raised by the defendants.

III. *Should the court have granted the motion for defendant union for accelerated judgment of dismissal, or in the alternative, a summary judgment on the ground that plaintiff failed to exhaust his intra-union remedies?*

The cases cited by defendants to support their contention that intra-union remedies must first be exhausted before relief may be sought from the courts fall short of the goal. Each case does hold that a union member must exhaust his intra-union remedies before the courts are available to him. However, this result follows only where: (1) the employer is seeking to enforce rights under a union contract, *Field* v. *Local 652 UAW AFL-CIO* (1967), 6 Mich App 140; (2) the claim is some impropriety of union management, *Duffy* v. *Kelly* (1958), 353 Mich 682; *Mayo* v. *Great Lakes Greyhound Lines* (1952), 333 Mich 205; (3) the claim is for damages for alleged wrongful discharge, *Sewell* v. *Detroit Electrical Contractors Association* (1956), 345 Mich

93; *Kennedy* v. *UAW-AFL-CIO Local No. 659* (1966), 3 Mich App 629.

Defendants cite no case in which a plaintiff has been precluded from bringing an action for tort in the courts because of the failure to first exhaust intra-union remedies. Plaintiff's claim does not involve internal union problems and, therefore, defendants' arguments do not apply to the instant problem. We find that the trial court was correct in refusing to grant a summary judgment based upon plaintiff's failure to first exhaust his intra-union remedies.

IV. *Is there any evidence that defendant union was negligent?*

The trial judge submitted the case to the jury instructing that the union could be found liable on one of two theories. The trial judge first instructed that the union could be liable for the acts of the individual defendants if their conduct in assaulting the plaintiff was within the scope of their employment. He also instructed the jury that the union could be liable to the plaintiff for negligence in failing to use reasonable care to prevent injuries to the plaintiff.

Defendant union cites the case of *Bradley* v. *Stevens* (1951), 329 Mich 556. However, that case involved the negligence of a principal in the failure to investigate and learn the reputation of an employee-agent. Since the facts are, at best, only tangentially related to the facts presented here, its only relevance is in the most general terms.

However, even were we to find in defendant union's favor on this issue, we have already decided, in discussing defendants' Issues I and II, that sufficient evidence was presented to support the verdict based upon the first theory upon which the case was submitted to the jury. Since the union's negligence

is not necessary to find liability under that theory, the verdict of the jury must stand.

Reversed and remanded for a reinstatement of the jury verdict.

All concurred.