WHITE v EXTRA LABOR POWER OF AMERICA

1. Master and Servant—Existence of Relationship—Economic Reality.

The "economic reality" test for the existence of an employer-employee relationship includes as factors to be considered control over a worker's duties, payment of wages, the right to hire and the right to fire, and the right to discipline.

2. Workmen's Compensation—Computation of Benefits—Labor Brokers—Wage Differential.

The difference between the amount paid to a worker for his services by his employer, a labor broker, and the amount paid to the labor broker by the employer for whom the worker performed his services is not included in computing workmen's compensation benefits because the wage differential never accrued to the economic advantage of the worker but arose as a result of an agreement between the labor broker and the employer.

3. Workmen's Compensation—Dual Employers—Liability for Benefits—Question of Fact—Appeal and Error.

A determination of which of two employers is liable to pay workmen's compensation benefits is a question of fact, and where there is support in the record for the factual findings, that finding is conclusive and binding upon the Court of Appeals.

4. Workmen's Compensation—Dual Employers—Liability for Benefits—Labor Brokers.

A labor broker was exclusively liable for the payment of workmen's compensation benefits to an employee who was injured while on the premises of another employer even though the

References for Points in Headnotes
[1] 53 Am Jur 2d, Master and Servant § 2.
[2, 5] 58 Am Jur, Workmen's Compensation § 308 et seq.
[3, 4] 58 Am Jur, Workmen's Compensation § 89.
[6] 58 Am Jur, Workmen's Compensation § 549.

employee was subject to direction and control of the latter employer's supervisory personnel where only the labor broker paid the injured worker's wages, and had the right to fire and to refuse to hire him.

5. WORKMEN'S COMPENSATION—COMPUTATION OF BENEFITS—AVERAGE WEEKLY WAGE—FACTUAL SUPPORT—REMAND.

Lack of factual support in the record for a workmen's compensation hearing referee's finding of an injured worker's average weekly wage requires a remand in order that the determination be made upon an established record.

6. WORKMEN'S COMPENSATION—DELINQUENT PAYMENTS—INTEREST.

Interest is allowable at the rate of five percent per annum on all delinquent workmen's compensation benefit payments from the date compensation would have been due had it been paid voluntarily (MCLA 438.7, 438.31).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 April 3, 1974, at Detroit. (Docket Nos. 17017, 17070.) Decided July 23, 1974. Leave to appeal applied for.

Claim by Robert White against Extra Labor Power of America and Estan Manufacturing Company for workmen's compensation. Benefits granted. Plaintiff appeals the amount of compensation awarded; defendant Extra Labor Power of America appeals seeking apportionment. Affirmed and remanded for further proceedings.

*Kelman, Loria, Downing & Schneider,* for plaintiff.

*Charfoos & Charfoos* (by *David F. Dickinson*), for defendant Extra Labor Power of America.

*Conklin, Benham, McLeod, Ducey & Ottaway, P. C.* (by *Thomas P. Chuhran*), for defendant Estan Manufacturing Company.

Before: BASHARA, P. J., and BRONSON and CAR-
LAND,* JJ.

CARLAND, J. On March 26, 1973, plaintiff Robert
White was awarded compensation by the Work-
men's Compensation Appeal Board on his claim
against Extra Labor Power of America (hereinaf-
ter referred to as Extra Labor) for the loss of four
fingers on his left hand arising through the opera-
tion of a punch press on the premises of Estan
Manufacturing Company (hereinafter referred to
as Estan). At the same time the appeal board
affirmed the decision of the referee denying plain-
tiff recovery of compensation benefits against Es-
tan. It is from this latter decision that appellants
appeal.

The accident occurred on December 21, 1965.
Plaintiff had been working at Estan since October
4, 1965 on assignment from Extra Labor, a labor
broker licensed by the State of Michigan.

The plaintiff reported each morning to Extra
Labor after his initial hiring on October 4, 1965.
He there received a time sheet and was trans-
ported by Extra Labor to Estan where he per-
formed his day's work. At the conclusion of each
day, the hours worked would be noted by Estan on
the time sheet. This time sheet was then presented
to Extra Labor and plaintiff was immediately paid
for that day's work. Although plaintiff was never
on the payroll of Estan, he was while working on
its premises subject to direction and control of its
supervisory personnel.

Periodically, Extra Labor billed Estan for the
hours worked by its employees such as plaintiff at
an estimated rate of $1.95 per hour. All of the

_____
* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

hours which plaintiff worked in excess of 40 hours per week were paid on the basis of time and one-half.

Extra Labor paid plaintiff $1.25 per hour for his work at Estan. The difference between the $1.95 per hour wage rate paid to Extra Labor and the $1.25 wage rate paid by Extra Labor to plaintiff was retained by Extra Labor to cover the cost of its operation, including social security and workmen's compensation.

Plaintiff testified that during the first six weeks of employment he worked ten hours per day, six days per week, and that during the final five weeks, he worked eight hours per day and six days per week. This testimony is not borne out by the records of Extra Labor. Plaintiff further testified that he was paid $1.30 per hour for the afternoon shift and $1.25 per hour for the morning shift.

The referee found plaintiff's average weekly wage to be $60 computed at the rate of $1.25 per hour and therefore fixed his compensation at $40 per week. Since Extra Labor's insurer had been paying at the rate of $33 per week, a deficiency was determined to be due and interest was assessed thereon at the rate of five percent per annum.

It is beyond dispute that on December 21, 1965, the date of the accident, both Extra Labor and Estan were employers of plaintiff, *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259; 169 NW2d 326 (1969). Plaintiff now claims that the wage differential should be included in computing his benefits. Plaintiff, having filed a claim asserting Extra Labor to be his employer, now seems to assert that this employer-employee relationship ceased each day at the time he began his work at Estan. No such claim was

asserted below. Plaintiff in effect now says that he engaged Extra Labor to act as his agent in finding him employment. This claim against Estan based on a theoretical principal-agent relationship with Extra Labor is inconsistent with the "economic reality" test which determines the existence of the employer-employee relationship, *Goodchild v Erickson,* 375 Mich 289, 293; 134 NW2d 191 (1965). Although Estan had a certain right of control while plaintiff was on its premises, it is not determinative of the issue here involved.

In the "economic reality" test, control of the worker's duties is only one factor among four to be considered in a determination of whether an employer-employee relationship exists. The other factors are payment of wages, the right to hire and fire, and the right to discipline, *Cronk v Chevrolet Local 659,* 32 Mich App 394, 399; 189 NW2d 16 (1971).

In the instant case, only Extra Labor paid plaintiff's wages. Moreover, Extra Labor had the right to fire and to refuse to hire plaintiff. Perhaps Estan could, in effect, fire plaintiff by refusing to permit him to work in the future, but only Extra Labor could decide whether plaintiff would in fact be hired. The claims by plaintiff of the existence of the principal-agent relationship and that the wage differential was in reality compensation for services rendered by the agent clash with economic reality. This differential was paid by Estan in order that it might avoid the expense of maintaining certain employment records concerning plaintiff, such as withholding and social security payments. The differential arose as the result of an agreement between Extra Labor and Estan in which plaintiff was not involved.

The wage differential never accrued to the eco-

nomic advantage of plaintiff and therefore should not be included in computing his workmen's compensation benefits, *Hite v Evart Products Co,* 34 Mich App 247; 191 NW2d 136 (1971).

It would seem that Extra Labor could reasonably be considered to be plaintiff's primary employer at all times. Extra Labor contends, however, that despite this fact, and since both it and Estan were employers of plaintiff, they should be jointly liable for the workmen's compensation to which plaintiff is entitled. In *Wing v Clark Equipment Co,* 286 Mich 343; 282 NW 170 (1938), it was held that joint liability does not necessarily follow from a dual employer situation. There, the Court said that since both paid wages, separate awards should issue. Here only Extra Labor paid wages and hence there was no basis upon which an award could be levied against Estan.

Moreover, in *Allen v Kendall Hardware Mill Supply Co,* 305 Mich 163; 9 NW2d 45 (1943), the Court held that the determination of which employer should be liable to pay benefits was a question of fact. This result was reached by a finding of who was in control of the employee at the time of the injury. It would likewise be a question of fact when the "economic reality" test is used. Since there is support in the record for the factual finding that Extra Labor should be exclusively liable for the payment of benefits, that finding is conclusive and binding upon this Court, *Coates v Continental Motors Corp,* 373 Mich 461; 130 NW2d 34 (1964).

An examination of the record discloses there to be no factual support for the referee's finding of fact that plaintiff's average weekly wage amounted to $60. Although plaintiff testified that during the 11 weeks of employment he worked a total of 600

hours and earned $867, he later admitted that during the first week he earned only $20. Although Extra Labor's records were available showing plaintiff's earnings, they were not in fact made a part of the record to establish his average weekly wage. This despite the fact that plaintiff at one time conceded the correctness of these records, which concession he later withdrew. There appears to be no basis for the determination of wages made by the referee. A remand is therefore necessary in order that the determination be made upon an established record.

The award being in the sum of $40 per week, and since plaintiff had only been receiving $33 per week, interest at five percent was allowed on the $7 difference. The plaintiff now maintains that interest at six percent should have been assessed. This claim is without merit.

*Wilson v Doehler-Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1964), held that while there was no express statute for the allowance of interest on a workmen's compensation award, there was no statute which forbade its allowance; that, therefore, the circuit court should include interest in any judgment entered based upon an award. This ruling was justified upon the finding that the right to an award arose because of the contractual relationship between employers and employees; that having determined the proceeding to be one based upon contract, MCLA 438.7; MSA 19.4 became applicable.

Following this determination, the Court held that such interest was payable "from the date compensation would have been due had it been paid voluntarily". Interest in the instant case became payable on all delinquent payments from the date of the accident, December 21, 1965. Since

interest is allowable, the rate is fixed at five percent in the case at bar by virtue of the provisions of MCLA 438.51; MSA 19.11, now MCLA 438.31; MSA 19.15(1).

We find MCLA 600.6013; MSA 27A.6013 to have no application in the case at bar since it applies only to judgments and no judgment has been entered here. Further it should be noted that the amendment to this statute raising the rate from five percent to six percent did not become effective until March 30, 1973, and can have no retroactive effect on rights already determined.

We affirm and remand for a factual determination of plaintiff's average weekly earnings.

All concurred.