ASKEW v MACOMBER

Docket No. 57433. Argued June 10, 1976 (Calendar No. 13).—Decided
    December 7, 1976.

Carrie Askew claimed workmen's compensation benefits against
    defendants M. Alicia Macomber, the Second National Bank of
    Saginaw, and Michigan Mutual Liability Company. Mrs. Ma-
    comber, because of her advanced age, had entered into an
    *agency agreement with the bank for the management of her
    property* which authorized the bank to pay for Mrs. Macom-
    ber's care. The bank hired the plaintiff as a practical nurse for
    Mrs. Macomber, and the plaintiff was injured in the course of
    that employment. The Workmen's Compensation Appeal Board
    awarded benefits to the plaintiff to be paid by the bank and its
    insurer, Michigan Mutual. The Court of Appeals, Allen, P. J.,
    and D. F. Walsh and O'Hara, JJ., reversed, and the order of the
    hearing referee finding liability as to defendant Macomber
    alone was reinstated (Docket No. 21540). Defendant Macomber
    appeals. *Held:*

    1. Whether the bank was the plaintiff's employer for pur-
    poses of workmen's compensation is a question of law properly
    *left to the courts.*

    2. Whether a business was an employer of a worker claiming
    workmen's compensation benefits depends upon the economic
    realities of their relationship. Among the relevant factors
    which demonstrate an employment relationship are: (1) control
    of the worker's duties, (2) the payment of wages, (3) the right to
    hire and fire, and the right to discipline, and (4) the perform-
    ance of the worker's duties as an integral part of the business
    toward the accomplishment of a common goal.

    3. Under the application of the economic reality test, the
    bank was not the plaintiff's employer. The bank took no role in
    the day-to-day supervision of the performance of the plaintiff's
    tasks. No bank funds were used to pay the plaintiff. The fact
    *that the bank impliedly had the right to fire the plaintiff does*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 5] 82 Am Jur 2d, Workmen's Compensation §§ 635–637.
[2, 4, 6, 7] 81 Am Jur 2d, Workmen's Compensation § 53.

not confer employer status on the bank if it was merely executing its duties as its customer's agent. Finally, the work of caring for elderly people is not an integral part of the bank's business, and the bank was not functioning as a labor broker but pursuant to an explicit agency agreement with a customer.

Justice Williams, joined by the Chief Justice and Justice Levin, dissented. He would hold:

1. The economic realities of the relation determine whether an employment relation exists under the Workmen's Compensation Act. Control is a factor in determining the economic realities, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but these elements should be viewed as a whole, assigning primacy to no single one. The test is not a matter of terminology, oral or written, but of the realities of the work performed; whether it is part of a larger common task, a contribution to the accomplishment of a common objective.

2. The economic reality of this case existed solely in the employment relation between the plaintiff and the Second National Bank. The agency agreement gave the bank the sole authority and duty to hire help to care for Mrs. Macomber's needs. The bank, through its trust agent, hired the plaintiff, established the terms and conditions of her employment, supervised her work to the extent that was necessary, and had the right to control the terms, conditions, and continuation of the plaintiff's employment. Mrs. Macomber, because of a physical infirmity which rendered her incapable of even basic communication, exercised no control over the plaintiff or her employment. Therefore, the bank is the plaintiff's employer under the act and is exclusively liable for the workmen's compensation payments.

Affirmed.

63 Mich App 359; 234 NW2d 523 (1975) affirmed.

### OPINION OF THE COURT

1. WORKMEN'S COMPENSATION—EMPLOYMENT—PRINCIPAL AND AGENT —QUESTION OF LAW.

Whether a bank which hires a nurse to care for a customer pursuant to an agency agreement to manage the customer's property is the employer of the nurse for purposes of workmen's compensation is a question of law properly left to the courts.

2. WORKMEN'S COMPENSATION—EMPLOYMENT—ECONOMIC REALITY.

Whether a business was an employer of a worker claiming

workmen's compensation benefits depends upon the economic realities of their relationship; among the relevant factors which demonstrate an employment relationship are: (1) control of the worker's duties, (2) the payment of wages, (3) the right to hire and fire, and the right to discipline, and (4) the performance of the worker's duties as an integral part of the business toward the accomplishment of a common goal.

3. Workmen's Compensation—Employment—Principal and Agent —Economic Reality.

A bank serving as a financial agent for a customer under an agency agreement was not liable as an employer for workmen's compensation benefits to a plaintiff nurse employed to care for the customer where the bank took no role in the day-to-day supervision of the performance of the plaintiff's tasks; the bank paid the plaintiff by a transfer of the customer's own funds; the bank was not in the business of supplying nurses for elderly people and did not operate as a labor broker; and, although the bank had hired the plaintiff, and impliedly had the authority to fire her, the bank was merely executing its duties under an explicit agency agreement with the customer.

4. Workmen's Compensation—Employment—Economic Reality.

The test of whether a person or business is liable for workmen's compensation benefits as the employer of a claimant is not a matter of terminology, oral or written, but of the realities of the work performed; control of the claimant is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one.

Dissenting Opinion

Kavanagh, C. J., and Williams and Levin, JJ.

5. Workmen's Compensation—Employment—Principal and Agent.

*A bank which hires a nurse to care for a customer pursuant to an agency agreement to manage the customer's property is the employer of the nurse for purposes of workmen's compensation where the bank controlled the worker's duty, paid her wages, had the implied right to hire and fire, and the right to discipline, and the customer, who had a physical infirmity which rendered her incapable of even basic communication, exercised no control over the worker or her employment.*

6. WORKMEN'S COMPENSATION—EMPLOYMENT—ECONOMIC REALITY.

 *Whether a business was an employer of a worker claiming workmen's compensation benefits depends upon the economic realities of their relationship; among the relevant factors which demonstrate an employment relationship are: (1) control of the worker's duties, (2) the payment of wages, (3) the right to hire and fire, and the right to discipline, and (4) the performance of the worker's duties as an integral part of the business toward the accomplishment of a common goal.*

7. WORKMEN'S COMPENSATION—EMPLOYMENT—ECONOMIC REALITY.

 *The test of whether a person or business is liable for workmen's compensation benefits as the employer of a claimant is not a matter of terminology, oral or written, but of the realities of the work performed; control of the claimant is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one.*

*Smith & Brooker, P. C.* (by *Francis B. Drinan),* for defendant Macomber.

*Davidson & B̵reen, P. C.,* for defendants Second National Bank of Saginaw and Michigan Mutual Liability Company.

COLEMAN, J. The defendant-appellant, the estate of M. Alicia Macomber,[1] appeals from a Court of Appeals decision[2] finding defendant-appellant to be the sole employer of the plaintiff and therefore exclusively liable for workmen's compensation payments. We affirm the Court of Appeals.

## I

The plaintiff was injured in April of 1969 as a result of a slip and fall on the porch steps at Mrs. Macomber's home. Defendants do not dispute plaintiff's injury. The question on appeal is whether the Court of Appeals erred in finding that

---

[1] Mrs. Macomber passed away during the pendency of these proceedings. Pursuant to GCR 1963, 202, a substitution of the administrator of the estate of the decedent was effected on September 9, 1976.

[2] 63 Mich App 359; 234 NW2d 523 (1975).

Mrs. Macomber was the sole employer of the plaintiff.[3]

In November of 1965, then-95-year-old Mrs. Macomber entered into an agreement with the defendant Second National Bank of Saginaw (hereinafter the bank). Mrs. Macomber's interest was represented by her attorney. The "agency agreement" required the bank to perform essentially fiscal duties.[4] Additionally, paragraph 3 of the agreement provided:

"3. So long as it holds said property the Agent shall collect the principal and income and after deducting from the income collected its reasonable compensation for its services hereunder, the Agent shall pay the remainder thereof to the Principal or make such other disposition thereof as the Principal may direct in writing filed with the Agent. If, in the opinion of the Agent, because of illness, misfortune or other emergency the Principal shall be unable to make arrangement for her care, support, maintenance, comfort and pleasure, including, without limitation, household expenses, complete medical care and attention, hospital and nursing services and other expenses incidental thereto, the Agent shall pay out of the funds in its hands from time to time such sums as in its sole discretion it shall deem necessary to accomplish same."

The workmen's compensation appeal board found as a matter of fact that plaintiff was approached in 1968 by Mrs. Macomber's attorney. Plaintiff had previously worked for Mrs. Macomber's attorney as a nurse. The plaintiff was referred to Mrs. Hosmer, trust administrator at the

[3] Defendant-appellant concedes on appeal that it may be considered the plaintiff's employer but argues on appeal that plaintiff was also employed by the bank.

[4] The bank was required to manage Mrs. Macomber's property, deliver it to her upon her order, and consult with her regarding investments.

bank, whose duties were to oversee the affairs of the Macomber estate. The appeal board found that Mrs. Hosmer arranged for plaintiff to work for Mrs. Macomber pursuant to the bank's obligations under the agency agreement. The appeal board, contrary to the referee, found as a matter of fact that plaintiff was an employee of the bank. The bank was held liable for plaintiff's workmen's compensation benefits. The Court of Appeals reversed.

## II

The appellate courts of this state are bound by the appeal board's findings of fact.[5] As the Court of Appeals properly noted, however, the question of whether the bank is the plaintiff's employer for purposes of workmen's compensation is an issue of law properly left to our determination.[6]

We do not consider the bank's liability with respect to the discharge of its duties as fiduciary, but decide only that narrow question presented by the parties.

Relying on recent decisions of the Michigan appellate courts, the appellant contends that the bank was an employer of the plaintiff under the "economic realities" of the instant situation.[7] Under the economic reality test, among the relevant factors to be used are (1) control of a worker's duties, (2) the payment of wages, (3) the right to

[5] MCLA 418.861; MSA 17.237(861).

[6] *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 262; 169 NW2d 326 (1969).

[7] An excellent historical summary of the manner in which the "economic reality" test became the criteria by which to discern an employment situation is found in *McKissic v Bodine,* 42 Mich App 203, 205–208; 201 NW2d 333 (1972).

This Court most recently reaffirmed the economic reality test in *Solakis v Roberts,* 395 Mich 13, 25; 233 NW2d 1 (1975).

hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal. Under the application of the economic reality test, the bank was not the plaintiff's employer.

(1) Although the bank discussed salary and hours with the plaintiff, that was the end of its attempt to control her. Unlike the labor broker cases, Mrs. Askew did not report to the bank each day to await assignment. After plaintiff was hired, she reported to Mrs. Macomber's home and was guided by her. The bank took no role in the day-to-day supervision of the performance of plaintiff's tasks.

(2) Mrs. Askew went to the bank to receive her weekly pay, but the check was drawn on the Macomber estate, a separate IRS account. No bank funds were utilized. This procedure was consonant with the agency agreement. It comprised no more than a transfer of Mrs. Macomber's funds to plaintiff.

(3) Other facts to be considered in the economic reality test are the right to hire and fire, and the right to discipline. WCAB found that the bank had the authority to hire the plaintiff and impliedly the right to fire her. It is not clear whether the attorney (deceased at the time of hearing) hired plaintiff and the bank arranged hours and payment details, or whether the bank hired her on the attorney's recommendation, but the case does not turn on this point. As the Court of Appeals noted, this fact alone does not confer employer status on the bank if it was merely executing its duties as Mrs. Macomber's agent.

There was no testimony indicating that any discipline was ever administered. However, the

bank was not involved in the day-to-day supervision of plaintiff's tasks.

(4) Not even the appellant would argue that banks are in the business of supplying nurses for elderly people. The work of caring for Mrs. Macomber is not an integral part of the bank's business.[8]

### III

Plaintiff offers some recent Michigan decisions in support of its argument that the bank was Mrs. Askew's employer and therefore plaintiff was covered by the bank's workmen's compensation insurance. These cases, however, are inapposite to the facts of this proceeding. The leading cases applying the economic reality test and finding an employer-employee relationship have involved labor brokers.[9] Labor brokers garner profits by efficiently matching workers with temporary work needs. Their very existence depends on the act of supplying a labor force for other concerns. That *is* their business. In the labor broker context, one would have to answer affirmatively the following: "[I]s the work being performed an integral part of the employer's business?"[10] We cannot say that hiring nurses for other businesses or individuals is an integral part of the banking business.

Another distinguishing factor in the instant matter is the existence of an explicit agency agreement. None of the cases cited by appellant involves such an agreement. It is interesting to note that the plaintiff in one of the labor broker cases

---

[8] Both *Renfroe* and *White v Extra Labor Power,* 54 Mich App 370; 221 NW2d 214 (1974), involved dispatch rooms from which the employees were daily sent forth.

[9] *Solakis, supra. See also: Renfroe v Higgins, supra.*

[10] *McKissic v Bodine, supra,* at 208.

claimed the existence of a principal-agent relationship. The Court of Appeals and this Court rejected the argument because it clashed with the economic reality of the fact situation.[11]

Although we agree generally with the Court of Appeals opinion, we do not agree that "[t]he ultimate test is: Whose is the work being done?" There is no "ultimate" test under the "economic reality" theory.

As Mr. Justice SMITH stated in *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959):

"This is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one."

In summary, when we view the economic realities of the instant case, the authorities relied upon by appellant are inapposite. The bank was operating pursuant to an express agency agreement. The employment of nurses was not an integral part of the bank's business. Although the bank drafted the check for plaintiff's wages, the funds came from the Macomber estate, a separate account. Although the bank discussed wages and hours with the plaintiff and arranged the hiring of plaintiff for Mrs. Macomber, it took no part in the day-to-day control or supervision of plaintiff's duties. So far as we know, plaintiff had no occasion even to go to the bank except to receive her pay once each week and there is no evidence of any attempt by the bank to supervise or discipline plaintiff. The

---

[11] *White, supra,* at 374; *Solakis, supra,* at 25.

bank's actions on behalf of Mrs. Macomber were those of an agent on behalf of a principal.

Under the criteria of the economic reality concept, M. Alicia Macomber was the employer of Carrie Askew.[12]

The Court of Appeals is affirmed.

FITZGERALD, LINDEMER, and RYAN, JJ., concurred with COLEMAN, J.

WILLIAMS, J. The issue in this case is the determination of who the "employer" is for purposes of the Worker's Disability Compensation Act.

We hold that the Workmen's Compensation Appeal Board properly found on the facts of this case that "economic reality" existed solely in the employment relation between plaintiff-appellee Carrie Askew and defendant-appellee Second National Bank of Saginaw. Therefore, Second National Bank of Saginaw is plaintiff's "employer" under the "act" and exclusively liable for the worker's compensation payments.

Accordingly, we reinstate the decision of the Workmen's Compensation Appeal Board and reverse the Court of Appeals.

## I—FACTS

On November 5, 1965, Alicia Macomber, then 95 years old, entered into an "Agency Agreement" with defendant Second National Bank of Saginaw (hereinafter referred to as "the bank"). Under the agreement Mrs. Macomber was principal, the bank agent. The agreement was executed with the aid of an attorney, Jerome Weadock. The bank's respon-

---

[12] Plaintiff also argues the dual employment theory which we do not address in this opinion, finding in it no merit, for reasons set forth by the Court of Appeals.

sibilities under the terms of the agreement were that it would hold and manage Mrs. Macomber's property, "deliver" it to Mrs. Macomber "upon her order" and consult with her regarding investments. Paragraph 3 of the agreement provided:

"3. So long as it holds said property the Agent shall collect the principal and income and after deducting from the income collected its reasonable compensation for its services hereunder, the Agent shall pay the remainder thereof to the Principal or make such other disposition thereof as the Principal may direct in writing filed with the Agent. If, in the opinion of the Agent, because of illness, misfortune or other emergency the Principal shall be unable to make arrangement for her care, support, maintenance, comfort and pleasure, including, without limitation, household expenses, complete medical care and attention, hospital and nursing services and other expenses incidental thereto, the Agent shall pay out of the funds in its hands from time to time such sums as in its sole discretion it shall deem necessary to accomplish same."

At all times involved in this case Mrs. Macomber was disabled, and the bank, as agent, was in complete control of Mrs. Macomber's affairs pursuant to paragraph 3.

In 1968 plaintiff Carrie Askew was contacted by Mr. Weadock, who asked Mrs. Askew if she would be interested in caring for an elderly woman as a practical nurse. Mr. Weadock personally knew Mrs. Askew and was aware of the fact that she had experience as a practical nurse. When Mrs. Askew expressed interest, Mr. Weadock told her that Irene Hosmer, trust administrator at the Second National Bank whose duties were to oversee the Macomber estate, would telephone her regarding prospective employment. Consequently, after hearing from Mrs. Hosmer and meeting with

her at a pre-employment interview, Mrs. Askew accepted employment as a practical nurse for Mrs. Macomber.

In April, 1969, Mrs. Askew injured her back and legs when she slipped and fell on the front porch steps of Mrs. Macomber's home. Mrs. Askew petitioned for a hearing with the Bureau of Workmen's Compensation. On August 2, 1972, the workmen's compensation hearing referee found that Mrs. Askew received a personal injury arising out of and in the course of her employment. He further held that Mrs. Macomber was Mrs. Askew's employer within the meaning of the Worker's Disability Compensation Act (hereinafter referred to as "the act"). He added:

"I do not believe it to be the function of the bureau to make the determination as to whether Second National Bank as her agent, failed in its duty to provide her with a workmen's compensation policy, when they should have known she was an employer under the act."

He ordered that Mrs. Macomber "pay compensation at the rate of $69 per week for partial/total disability to said employee from 12/16/69 * * * until further order of the bureau; and, that said defendant(s) shall reimburse said employee $336" plus 5% interest for Mrs. Askew's medical and hospital bills.

Mrs. Macomber appealed this decision to the Workmen's Compensation Appeal Board. The significance of the appeal is that the record reveals that in addition to Mrs. Askew, two other persons were employed to take care of Mrs. Askew's personal needs, Dorothy Miller and Carrie Moore. If we assume (as the bank argues) that Mrs. Macomber was Mrs. Askew's "employer" under the act, then Mrs. Macomber was within the ambit of the

Worker's Disability Compensation Act [which in-
cludes "All private employers * * * who regularly
employ 3 or more employees at 1 time." MCLA
418.115(a); MSA 17.237(115)(a)], when Mrs. Askew
became an employee. Apparently, the bank which
was then managing Mrs. Macomber's affairs be-
cause of her incompetency failed to take out work-
er's compensation for her, leaving her liable to
sustain the full burden of compensation payments
in the event of injury.[1]

On August 19, 1974, the appeal board overruled
that part of the hearing referee's decision which
found Mrs. Macomber to be Mrs. Askew's sole
employer, finding that:

"the economic realities of the instant situation are
that defendant Second National Bank hired plaintiff,
established the terms and conditions of her employ-
ment, supervised plaintiff's work to the extent that an
employee of plaintiff's skill required such supervision
and had absolute control over the terms and continua-

[1] If we were to hold that Mrs. Macomber is Mrs. Askew's "em-
ployer" under the act, it would appear that Mrs. Macomber may have
a cause of action against Second National Bank for breach of its duty
of care as agent under the "Agency Agreement" based on the bank's
failure as agent to provide Mrs. Askew with worker's compensation
insurance when it knew or should have known Mrs. Macomber was
an "employer" under the act.

"It is, of course, established that the managing agent occupies a
position of confidence, in which he must act with reasonable care and
is held to a standard of conduct higher than that which prevails in
the ordinary course of business in the marketplace." *Investment Co
Institute v Camp*, 274 F Supp 624, 640 (DDC, 1967). The proper test
for determining the duty of care and skill of an agent to the principal
is articulated in 2 Restatement Agency, 2d, § 379:

"(1) Unless otherwise agreed, a paid agent is subject to a duty to
the principal to act with standard care and with the skill which is
standard in the locality for the kind of work which he is employed to
perform and, in addition, to exercise any special skill that he has."

If an agent fails to exercise such care and the result of his failure is
that the principal is damaged, the agent is responsible for such
damage. *See* 2 Restatement Agency, 2d, § 379, Comment. *See also*, in
general, 3 Am Jur 2d, Agency, §§ 202–206, and cases cited therein.

tion of this employment relationship. By virtue of the so-called agency agreement defendant Second National Bank, 'as an integral part of its business,' contracted to undertake and perform certain obligations and services for defendant Alicia Macomber which necessitated that it hire employees, including plaintiff. The proofs conclusively demonstrate that defendant Second National Bank was plaintiff's employer as that term is defined in the act and as interpreted by the courts."

Finding the Second National Bank to be the *"only* employer given the economic realities as revealed in the * * * testimony", the appeal board ordered defendant Second National Bank, instead of Mrs. Macomber, "to pay compensation in accordance with the hearing referee's decision".

On August 13, 1975, the Court of Appeals reversed the appeal board, reinstating the hearing referee's decision and order. Mrs. Macomber applied for leave to appeal to this Court. We granted leave November 25, 1975.

II—THE BANK IS MRS. ASKEW'S SOLE "EMPLOYER"
UNDER THE ACT

The issue before us is the determination of who is the "employer" in this case for purposes of the Worker's Disability Compensation Act.

It is established law in our state that the "economic realities" of an employment relation determine whether an employer-employee relationship exists under the act. *Tata v Muskovitz,* 354 Mich 695; 94 NW2d 71 (1959), adopting as the law of this state Mr. Justice TALBOT SMITH's dissenting opinion in *Powell v Employment Security Commission,* 345 Mich 455; 75 NW2d 874 (1956). See, also, *Schulte v American Box Board Co,* 358 Mich 21; 99 NW2d 367 (1959); *Goodchild v Erickson,* 375 Mich

289; 134 NW2d 191 (1965); *Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975).

There is, however, an inherent difficulty in determining the "economic realities" of a given employment relation. As our Court of Appeals aptly stated in *McKissic v Bodine,* 42 Mich App 203, 208; 201 NW2d 333 (1972), "the problem with economic reality is that it is a conclusion, and it is not a test in the sense that there are any well-defined criteria upon which an objective determination can be based". However, in past opinions, this Court has articulated certain principal factors for determining "economic reality". It has been stated that "Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance of discipline, but the test of economic reality views these elements as a whole, assigning primacy to no single one". *Schulte v American Box Board, supra,* 33 (SMITH, J., concurring). See, also, *Solakis v Roberts, supra,* 25; *Goodchild v Erickson, supra,* 293; *McKissic v Bodine, supra; Cronk v Chevrolet Local 659,* 32 Mich App 394, 399; 189 NW2d 16 (1971).

Also, in determining "economic reality," a court is to look "at the task performed, whether or not it is a part of a larger common task, 'a contribution to the accomplishment of a common objective.' " *Powell v Employment Security Commission, supra,* 478; see also, *McKissic v Bodine, supra.* The test is "not a matter of terminology, oral or written, but of the realities of the work performed". *Schulte v American Box Board, supra* 33 (SMITH, J., concurring). It "has not abolished the factors traditionally considered in determining an employment relationship, but has rather reorganized their combination, de-emphasizing the rigid and ambiguous control test and emphasizing a freer and more

realistic balancing of all the relevant factors in each case." *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 264–265; 169 NW2d 326 (1969).

Looking to the "realities of the work performed" and "realistically balancing" the above stated factors with respect to the facts of this case, we conclude that the Workmen's Compensation Appeal Board properly held that the existent economic realities clearly indicate defendant Second National Bank was Mrs. Askew's sole employer under the act. The facts reveal that under paragraph 3 of the "Agency Agreement" between the bank and Mrs. Macomber, the bank had the sole authority (and duty) to hire help to care for Mrs. Macomber's needs. Accordingly, Mrs. Hosmer, who was responsible for carrying out the provisions of the "Agency Agreement" for the bank, telephoned Mrs. Askew and asked her to come in for an employment interview. What occurred at this employment interview is crucial in determining the "economic reality" of Mrs. Askew's employment. The record clearly shows Mrs. Hosmer informed Mrs. Askew of her duties as a practical nurse for Mrs. Macomber (in general, "taking care of Mrs. Macomber"), the specific hours and schedule of her employment, and that Mrs. Hosmer negotiated a wage-agreement ($1.50 per hour) with Mrs. Askew. These circumstances were the basis of Mrs. Askew's testimony that "the bank hired me. And that's who I called myself working for". Furthermore, the record shows that *after* Mrs. Askew began her employment, Mrs. Hosmer, in accord with paragraph 3 of the "Agency Agreement," kept in contact "with the help" at Mrs. Macomber's house, adhering to what she referred to at the hearing as her "duty" to see that Mrs. Macom-

ber's needs were adequately seen to. Mrs. Askew
also came into personal contact with Mrs. Hosmer
every week: Mrs. Askew received her paycheck
(signed by Mrs. Hosmer) from Mrs. Hosmer at the
bank.

We believe these facts, viewed as a whole and
balanced with one another, compel the conclusion
that "economic reality" existed in the employment
relation between the bank and Mrs. Askew. The
bank, through Mrs. Hosmer, hired Mrs. Askew,
established the terms and conditions of her em-
ployment, supervised Mrs. Askew's work to the
extent that an employee with Mrs. Askew's skill
required supervision, and had the right to control
the terms, conditions, and continuation of Mrs.
Askew's employment. In addition, this authority to
hire (and thereby implicitly to fire), supervise, and
control the terms and conditions of Mrs. Askew's
employment, arose out of a contractual obligation
of the bank to Mrs. Macomber expressed in the
"Agency Agreement," the kind of agreement inte-
gral to an important aspect of the bank's opera-
tions. We therefore hold that the bank was Mrs.
Askew's "employer" under the act.

We find no such "economic reality" existed be-
tween Mrs. Macomber and Mrs. Askew. Clearly,
Mrs. Macomber exercised no control over the
terms, conditions, and continuation of Mrs. As-
kew's employment, or any supervisory control,
because, as the record shows, Mrs. Macomber's
physical infirmity rendered her incapable of even
basic communication with those who took care of
her daily needs. Furthermore, the record is clear
that Mrs. Macomber took no part whatsoever in
hiring Mrs. Askew; in fact, Mrs. Askew was hired
by the bank pursuant to the "Agency Agreement"
with Mrs. Macomber (established in part to care

for her daily needs) *because* she was incompetent to hire anyone to help her. And, although Mrs. Askew was paid from monies entrusted to the bank under the "Agency Agreement," it cannot be realistically said that Mrs. Macomber personally contracted to pay Mrs. Askew's wages.

We therefore reinstate the decision of the appeal board, which found the bank to be the sole employer of Mrs. Askew, and reverse the Court of Appeals. Costs to appellant.

Kavanagh, C. J., and Levin, J., concurred with Williams, J.