CAPITAL CARPET CLEANING AND DYE COMPANY, INC v
EMPLOYMENT SECURITY COMMISSION

Docket No. 80709. Submitted March 19, 1985, at Detroit.—Decided
May 2, 1985. Leave to appeal applied for.

A Michigan Employment Security Commission referee issued a
decision finding that certain carpet cleaners were employees of
Capital Carpet Cleaning and Dye Company, Inc., and that
Capital must pay employment security taxes based on "remu-
nerations" made to those "employees". Capital appealed that
decision to the MESC Board of Review, contending that the
carpet cleaners were independent contractors, not employees.
The board of review affirmed the decision of the referee. Capital
then appealed to the Oakland Circuit Court, which affirmed the
decision of the referee and board of review, Alice L. Gilbert, J.
Capital appeals. *Held:*

The test to be applied to determine whether or not an
employer-employee relationship existed is the economic reality
test. The finding of the referee and the board of review, when
considered in the light of the principles of the economic reality
test, was clearly supported by competent, material, and sub-
stantial evidence on the record as a whole. The circuit court did
not err in upholding that ruling.

Affirmed.

1. APPEAL — UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECU-
RITY COMMISSION BOARD OF REVIEW.

The Court of Appeals cannot disturb an order or decision of the
Michigan Employment Security Commission Board of Review
unless the order or decision is contrary to law or not supported
by competent, material, and substantial evidence on the record
as a whole (Const 1963, art 6, § 28; MCL 421.38[1]; MSA
17.540[1]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Unemployment Compensation § 91 *et seq.*

[2] 76 Am Jur 2d, Unemployment Compensation § 32 *et seq.*

Unemployment compensation: eligibility as affected by claimant's
insistence upon conditions not common or customary to particu-
lar employment. 88 ALR3d 1353.

2. Unemployment Compensation — Employment — Economic Reality Test.

Whether a business is an employer of a worker for purposes of the Michigan Employment Security Act depends upon the economic realities of their relationship; under the economic reality test, among the factors to be used are (1) control of the worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.

*William G. Wolfram,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *George M. Blaty,* Assistant Attorney General, for defendant.

Before: Wahls, P.J., and Bronson and T. C. Megargle,* JJ.

Per Curiam. The issue in the instant case is whether or not certain carpet cleaners are employees of plaintiff, a carpet cleaning company operated out of the City of Ferndale, Oakland County, Michigan. It is plaintiff's position that the carpet cleaners are independent contractors. It is the defendant's position that the carpet cleaners are employees and that plaintiff must, therefore, pay employment security taxes based on "remunerations" made to these "employees".

On January 30, 1980, the Michigan Employment Security Commission issued a redetermination finding that certain carpet cleaners were employees of plaintiff. On June 19, 1980, testimony was taken before the MESC Referee Division. On May 12, 1981, the referee mailed a decision affirming the redetermination. The Michigan Employment Security Board of Review affirmed the referee's

* Former circuit judge, sitting on the Court of Appeals by assignment.

decision in a split opinion. Plaintiff appealed to Oakland County Circuit Court pursuant to MCL 421.38; MSA 17.540. The Oakland County Circuit Court affirmed the decision of the board of review. Plaintiff now appeals as of right to this Court.

Paul Umlauf, Mike Talarchio, Charles Guthrie, and Murray Kahrnoff were all carpet cleaners, or former carpet cleaners, working under a contractual agreement with plaintiff. They were required to report to plaintiff's business place every morning and receive work assignments for the day. After receiving the invoices for carpet cleaning jobs to be performed, these carpet cleaners, having no business offices of their own, made appointments with customers out of plaintiff's office.

The carpet cleaners received a 50 percent commission on write-up business they obtained from plaintiff and a 60 percent commission for additional sales made to customers provided by plaintiff. The carpet cleaners had an opportunity to receive a $100 bonus for the most monthly sales. All income was turned over to plaintiff and the carpet cleaners were given a paycheck on Fridays. Income and social security taxes were not withheld from those checks.

The carpet cleaners rented equipment and purchased necessary chemicals from plaintiff. The cost of supplies was deducted from their weekly paychecks. If they chose, the carpet cleaners could purchase their own equipment. A certain chemical had to be purchased from plaintiff because of "special techniques" involved in cleaning carpets under plaintiff's systems.

The carpet cleaners were in control of the jobs themselves and were not supervised by plaintiff. If a problem arose that the carpet cleaners could not handle, the company would often take care of it without deduction from the carpet cleaners' com-

mission. The carpet cleaners were responsible for hiring and paying their own help. Some carpet cleaners testified that they carried workers' compensation insurance to cover their employees.

The carpet cleaners were encouraged, but not required, to wear plaintiff's T-shirts and pass out plaintiff's cleaning cards purchased from plaintiff. The carpet cleaners represented themselves as associated with plaintiff's business and promoted that business.

There was a division in the testimony as to whether the carpet cleaners could do outside carpet cleaning work. At least three testified they all believed that they could not do carpet cleaning work for another company or on their own. One thought he could do outside work although he had not done so.

The carpet cleaners all signed written agreements with plaintiff shortly after they began working. There was a division in the testimony as to whether or not they were required to sign the written agreements. The agreement was, however, terminable at will by either party.

The president of plaintiff's company, Michael Voorhees, testified that the carpet cleaners were independent contractors and entirely on their own. He testified that he had no control over the independent contractors when they were not working for the plaintiff and that they could do work on the side if they chose. He also testified, however, that he would not set aside work for a carpet cleaner if that individual was not showing up to work in the morning.

Based basically on this testimony the referee issued a decision finding the carpet cleaners were employees of plaintiff. That decision was affirmed by a divided MESC Board of Review. Plaintiff appealed to the Oakland County Circuit Court,

which affirmed the decision of the board of review in an opinion dated September 7, 1984, in which the jduge stated "even though plaintiff does not exercise direct hour-to-hour control over the carpet cleaners *[sic]* operation, plaintiff does control the overall direction of the carpet cleaners *[sic]* employment situation. Accordingly, the referee and board of review's holding that the services performed by the carpet cleaners for plaintiff do constitute employment within the meaning of the Michigan Employment Security Act is affirmed."

Plaintiff contends that the record does not support a finding that an employer-employee relationship existed between plaintiff and the carpet cleaners and that the parties have by contract done everything possible to establish an independent contractor agreement.

This Court cannot disturb an order or decision of the board of review unless the order or decision is contrary to law or not supported by competent, material, and substantial evidence on the record as a whole. MCL 421.38(1); MSA 17.540(1), Const 1963, art 6, § 28, *Allied Building Service Co v MESC,* 93 Mich App 500; 286 NW2d 895 (1979).

MCL 421.42; MSA 17.545 provides in part:

"(1) 'Employment' means service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied.

\* \* \*

"(5) Services performed by an individual for remuneration shall not be deemed to be employment subject to this act, unless the individual is under the employer's control or direction as to the performance of the services both under a contract for hire and in fact. Service performed by an individual for remuneration under an exclusive contract which provides for the individual's control and direction by a person, firm, or corporation

possessing a public service permit or by a certificated motor carrier transporting goods or property for hire shall be deemed employment subject to this act."

Common law applied a "right of control" test to determine whether or not an employer-employee relationship existed. *Powell v Employment Security Comm,* 345 Mich 455; 75 NW2d 874 (1956). In *Goodchild v Erickson,* 375 Mich 289, 293; 134 NW2d 191 (1965), a workers' compensation case, the Supreme Court declared that the "control" test had been abandoned as the "exclusive criterion by which the existence of an employee-employer relationship, for the purposes of remedial social legislation, is determined". In *Industro-Motive Corp v Wilke,* 6 Mich App 708, 712; 150 NW2d 544 (1967), this Court held that based upon *Goodchild, supra,* the Supreme Court had abrogated the use of the common law "control" test in interpreting social legislation "which we hold includes employment security legislation as well as workmen's compensation legislation". Control is only one of the many factors to be considered. The test now is based on "economic reality". *McKissic v Bodine,* 42 Mich App 203; 201 NW2d 333 (1972).

Under the economic reality test, among the relevant factors to be used are (1) control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal. *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976).

As the circuit court specifically found, plaintiff controlled the overall direction of the carpet cleaners' employment situation. Moreover, plaintiff paid their wages, and the work done by the carpet

cleaners was so integral to plaintiff's business that it appears that neither could exist without the other. Thus, the finding of the referee and the board of review, when considered in the light of the principles of the "economic reality" theory, was clearly supported by competent, material, and substantial evidence on the record as a whole. MCL 421.38; MSA 17.540. The circuit court did not err in upholding that ruling.

Affirmed.